71 So.2d 846

**AETNA LIFE INS. CO. v. SMITH.**

**6 Div. 651.**

Court of Appeals of Alabama.

April 6, 1954.

Geo. W. Yancey, London & Yancey, Birmingham, for appellant.

Barber & Barber, Birmingham, for appellee.

PRICE, Judge.

This action was brought to recover the sum of $1,000 alleged to have become due to plaintiff from defendant under a policy of group life insurance. The case was originally tried in the Intermediate Civil Court of Birmingham, resulting in a judgment for plaintiff. Upon appeal to the Circuit Court of Jefferson County, Alabama, it was tried by the court sitting without a jury. Judgment was rendered for plaintiff for the amount sued for and defendant appeals.

The main question raised upon this appeal is whether the insurance under the group policy had become effective upon the life of Carl Fred Smith at the time of his death on December 30, 1951. His employer, Jackson Veneer Company, had previously obtained the group policy from defendant. Mr. Smith began his employment on November 27, 1951, and made written application for insurance on that date.

In the employer's application for a group policy of insurance it is stipulated:

"It is agreed that no insurance shall become effective on any person unless such person is then a bona fide employee of the employer, regularly performing the duties of his occupation.

"N.B. The names of employees not regularly performing the duties of their occupations at the time they would otherwise be eligible for insurance may be presented to the Insurance Company for insurance upon return to active duty."

Other pertinent provisions of the policy are:

"The following classes of employees are excluded from insurance under this policy. Part-time employees (except full-time employees temporarily working on a part-time basis);

\* \* \* \* \* \*

"Each employee in service on March 27, 1950, shall be eligible for insurance on that date; each employee entering service subsequently shall become eligible for insurance immediately upon the completion of one month of continuous service.

\* \* \* \* \* \*

"Effective Date of Individual Insurance:

"Each eligible employee who has agreed to make the required contribution towards the cost of the insurance shall be insured in accordance with the Insurance Schedule: provided that: (a) an employee who makes written request to the Employer for insurance hereunder on or before his date of eligibility shall be insured as of such date of eligibility if then regularly performing the duties of his occupation, otherwise on return to active duty."

Mr. Smith continued to work regularly until Friday, December 14, 1951, which was the last day he worked before his death.

John W. Harrison a bookkeeper for the Jackson Veneer Company, testified Smith drew four weekly pay checks, the last one for the one day he had worked during the pay period from December 13th to Decem-

ber 20th. The employer was to pay part of the premium and Smith's portion was $4.80 monthly. With the exception of the first week he worked $1.20 was deducted from each of his weekly earnings to apply on the premium. On December 18th Smith came to the company office and borrowed $30 to pay the dentist for extracting some teeth. The plant operated through Friday, December 21st, and closed for Christmas week and did not reopen for work until Monday, December 31st. Smith died on Sunday, December 30th. This witness further testified Mr. Smith was kept on the rolls as an employee from the time he began work on November 27th until his death. His employment was never terminated. He was off from work due to illness and no work was available the last week prior to his death since the mill did not run. The Jackson Veneer Company submitted a monthly report to the insurance company as required by the policy, and the policy report showing Carl Fred Smith's application for insurance was submitted to Aetna Life Insurance Company on January 4 or 5, 1952. The death certificate was mailed along with the application.

Defendant introduced the deposition of Dr. J. Paul O'Neal. Dr. O'Neal stated he saw Mr. Smith on December 18th and again on December 28th. When he saw Mr. Smith on December 18th he complained of cold, with headache. Examination revealed upper respiratory infection, with one degree of fever. He was given tablets containing penicillin and sulfa drug, and empirin compound with codeine for headache. He appeared moderately ill but not severely or acutely so. It would not have been advisable for him to engage in his regular work as long as such condition existed.

When Mr. Smith presented himself at his office on December 28th he complained of a severe headache. He appeared to be intoxicated. He went to sleep on the examining table and the odor of alcohol was detected on his breath. He responded poorly to questioning but stated he had obtained some headache capsules from a local drug store and had been taking them. Because of his apparent intoxication he was not examined and no medicine was prescribed except plain empirin compound for headache. On one of his visits he stated he had had some teeth extracted recently, but it was the Doctor's impression Smith was off from work because of the respiratory infection. He stated it was impossible for him to say whether or not he had fever continuously during the period from December 18th to December 28th, but in his opinion Smith was totally disabled from performing all of the duties of his occupation from December 18th to December 28th, and he could not have done manual labor from December 18th up until his death, or any part of the time, with safety to his health.

Dr. MacLennan's statement also in evidence, certified that he attended Smith on December 30th and the cause of death was "Prob. Brain Tumor."

Mrs. Smith, the plaintiff, testified her husband had had flu or a cold and had had two teeth extracted ten or twelve days before he died, but was up walking around Sunday morning and died that afternoon.

It is uncontroverted that Smith was an employee of Jackson Veneer Company at the time of his death since neither he nor his employer had actually or impliedly terminated his employment.

We are of the opinion that it is perfectly apparent that the purpose of the policy provision under "Effective Date of Individual Insurance" subsection (a) set out above, "if then regularly performing the duties of his occupation, otherwise on return to active duty" was to prevent the insurance from becoming effective as to any employee who was not at work, performing the duties assigned to him on the date he became eligible for insurance, and if not at work on that day he would not become eligible until his return to active duty. This particular employee was an hourly wage worker with the assigned duty of firing the boiler in the boiler room. The evidence is undisputed that the employee was not at work on the date he otherwise

became eligible for insurance and did not thereafter return to duty. Therefore, the insurance never became effective as to him and the trial court erred in rendering judgment for plaintiff.

Reversed and remanded.