**Joy Schwartz, Plaintiff-Appellant, v. Morton S. Schwartz, Defendant-Appellee.**

Gen. No. 50,792.

First District, Fourth Division.

April 1, 1966.

Harold Orlinsky, of Chicago, for appellant.

Paul C. Ross, of Chicago (Harry S. Weber, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff appeals from that part of an order construing the portion of a divorce decree which provides that defendant pay as support for his two minor children "the sum of $145 per month or 25% of his net income after taxes."

In April 1965, three years after the entry of the decree, plaintiff filed a petition requesting that the defendant be ordered to produce certain financial books and records for the purpose of determining the amount by which 25% of his net income exceeded the sum of $145 per month for the years 1962 through 1964 and alleging that defendant had failed to comply with an agreed court order entered on December 10, 1964, that he render an accounting of his income for that period. Defendant moved to strike the petition on the ground that under the aforesaid provision he had the option of paying and had paid the lesser of $145 per month or 25% of his net income. Plaintiff filed an answer to the motion to strike and contended that under the provision the defendant was obligated to pay the greater of the aforesaid amounts. The trial court found that the defendant had the option of paying $145 per month or 25% of his net income; and that having paid the former, defendant need not account for or furnish information as to his income. In this appeal plaintiff contends that the provision is ambiguous and should be construed so as to require the defendant to pay for child support the sum of $145 per month or 25% of his net income after taxes, whichever is larger.

The evidence discloses the following:

Plaintiff and defendant were married on September 6, 1947, and were separated on August 11, 1961. Two daughters were born of the marriage. The parties were represented by counsel: plaintiff by her uncle (Frank Goldberg), and defendant by a family friend (Max Rit-

130

tenberg). With the advice and consent of their respective clients these attorneys carried on negotiations with regard to effectuating a settlement of various rights and obligations including that of child support payments. In October 1961 counsel for the plaintiff received a memorandum of defendant's proposal for child support which provided as follows: "minimum $50 a week for both, based on $10,000 a year income gross (each year to date from Decree) and percentage of increase on some formula, with a maximum." Upon receipt of this memorandum, counsel for the plaintiff countered with the proposal that the $50 a week minimum should be based upon a $10,000 a year net income before income taxes with an additional 15% of income from $10,000 to $15,000 and an additional 10% of income from $15,000 to $20,000, with no further additional amounts due on income of over $20,000. After numerous conferences between counsel, the attorney for plaintiff was notified that defendant had agreed to the terms set forth in the aforesaid counter-proposal with the exception that he should pay, on net income of $10,-000, a minimum of $25 per week for each child instead of $50 per week for both.

Shortly after the aforesaid series of exchanges the parties had a "blow-up," both attorneys withdrew from the case because of their relationship to the parties and other counsel were engaged. Subsequently a complaint for divorce was filed by the plaintiff but negotiations and discussions continued between the parties and their new counsel regarding settlement of the case. Finally, during a hearing before Judge Canel on a motion for temporary support, a settlement was reached. Counsel for the plaintiff, Stanton Ehrlich, was instructed by the court to prepare a decree "in conformity with that settlement."

Stanton Ehrlich testified in support of plaintiff's interpretation of the provision in question and stated that:

My understanding with reference to whether there was any minimum specified was that the figure that

131

was named was the minimal figure for child support, and that the percentage figure was to have applied when the defendant had income from whatever sources against which the percentage figure could apply, but in no event would it be a lesser figure than the $145 amount that was listed. I had a conversation with Mr. Friedman [referring to defendant's attorney at that time] as to the reason for this provision in Mr. Sol Friedman's office at 77 West Washington Street. At the time there were present Joy Schwartz, my client, and Morton Schwartz, his client. We discussed many of the terms of this settlement, and the child support arrangement was one of them. We discussed this on the basis that we could not determine what a figure of child support should be other than a minimum figure, because the defendant was not then employed. He had previously been employed by the plaintiff's father, and he at that time was no longer so employed. Therefore, we did not know and could not tell what his income was going to be. My recollection as to what was said by Mr. Morton Schwartz at this meeting that we had, relative to this provision, is that Mr. Schwartz agreed that the figure of $145 a month as child support was agreeable to him, and that he further was agreeable to paying more money for child support when he had income, and it would be on the basis of twenty-five per cent of whatever his income was when he had employment, but in no event would it be less than $145 per month for the child support of these children.

Edwin Armstrong testified that he is a licensed attorney associated with the firm employed by defendant at the time of the entry of the decree and that he was present at the meeting described by Ehrlich. However, the witness did not contradict the testimony of Ehrlich

132

with respect to the conversations at that meeting relating to child support. He testified that the parties went before Judge Canel in an effort to settle the case; that plaintiff and defendant, the two Goldbergs, Stanton Ehrlich, Sol Friedman (the attorney who was the principal representative of defendant at that time) and himself were present at that meeting; and that:

> One of the things discussed was the question of child support, and it was Judge Canel's rule of thumb that he would order about 25% for child support. It was not in this case but in any case. It was one of his ideas or feelings. We pointed out that we didn't know what our man would make and he figured the 25% was on the basis of the accounts Morton Schwartz might be handling at the time.

Frank Goldberg testified in rebuttal regarding his conversation at that meeting with Sol Friedman and stated that:

> He [Friedman] said "Well, take $145.00 because what Smokey [defendant] is making is subject to what his father-in-law gave him, as a bare minimum", and he said "If he makes more the 25% will attach", and I said "That will be hard but $145.00 is the bare minimum", and I said "It should still be $50.00 a week we all agreed to."
>
> I said "You have two girls"; one was about 13, the other 14. "How can they exist on about $17.50 a piece a week?" I said "That is too damn small." and he said "That is the best I can do with Smokey at the time." He said "Leave it alone and let things adjust themselves."
>
> This discussion I am talking about was in the presence of Judge Canel and in the presence of Mr. Schwartz, Mrs. Schwartz, Mr. Arthur Goldberg. Stanton Ehrlich was there, Sol Friedman was there,

133

everybody who had any connection with the case. The word "minimum" was used in the conversation between myself and Sol Friedman.

Defendant testified that:

My understanding at the time of the entry of the decree as to what was required of me under the terms of the decree as to payments for child support was that it was my option to pay 25% of some term called "net income" or $145 a month.

██ The meaning of a written instrument has been held to be ambiguous when the language used therein is reasonably susceptible to more than one meaning. Whiting Stoker Co. v. Chicago Stoker Corp., 171 F2d 248 (7th Cir). In a sworn petition filed on December 7, 1964, defendant admitted that the provision in question was ambiguous, alleging in paragraph 10 thereof as follows:

The the Decree for Divorce, insofar as payments for child support, is ambiguous and should set an exact sum of money that should be paid for child support.

The court entered an order on December 10 "without prejudice to either party" which provided in part that the defendant was to render an accounting of his net income from the date of the entry of the divorce decree to the date of the order. Moreover, prior to the introduction of any testimony, counsel for both plaintiff and defendant stated that if there was no ambiguity it was unnecessary to present testimony. The trial judge ruled that the court "wants to hear testimony here." From this we infer that in the opinion of the court there was a question about the definiteness of the child support provision. Additionally, at the conclusion of all the evidence, the trial judge telephoned Judge Canel (who entered the divorce decree) to ascertain what was meant by the

child support provision. We find that the provision in question is ambiguous in nature since it is reasonably susceptible to more than one interpretation. The court therefore followed proper procedure in hearing extraneous evidence for the purpose of ascertaining its true meaning. Greene v. Gust, 26 Ill App2d 2, 167 NE2d 438.

The settlement provisions incorporated within a decree of divorce should be construed so as to give effect to the intention of the parties. Walters v. Walters, 409 Ill 298, 99 NE2d 342. While all judgments and decrees are reasonably construed those which seek to provide support for a child receive special care and consideration of the courts. Vollenhover v. Vollenhover, 4 Ill App2d 44, 123 NE2d 114. At the time of the entry of the divorce decree the minor daughters of the parties were approximately twelve and thirteen years of age, respectively. Since their needs would obviously increase as they grew older, thereby requiring increased amounts of support, it is reasonable to assume that the parties intended to provide for the growing needs of their children so far as this was consistent with the earning power of the defendant. The evidence adduced by the plaintiff clearly shows that it was the intention of the parties at the time of the entry of the decree that defendant was to pay child support in the amount of $145 per month or 25% of his net income after taxes, whichever is greater. Except for the testimony of defendant, there is no testimony supporting the interpretation which defendant seeks to place on the child support provision in question.

Although plaintiff's petition was not filed under section 72 of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 72), defendant argues that plaintiff is barred by the two year limitation of that section from obtaining an interpretation of the child support provision in question. The purpose of that section is to permit a judgment or decree to be set aside, vacated or modified

under various circumstances where (1) there is an error which is apparent on the face of the record, or (2) there are facts not appearing in the record which, if known to the court at the time judgment was rendered, would have prevented its rendition. Collins v. Collins, 14 Ill2d 178, 151 NE2d 813. Since plaintiff is not requesting that any portion of the decree be set aside, vacated or modified in any respect but merely that the decree be enforced according to her interpretation thereof, section 72 is wholly inapplicable to the instant case.

We find that under the divorce decree the defendant is required to pay to the plaintiff for child support the sum of $145 per month or 25% of his net income, whichever is greater. The decision of the trial court is therefore reversed and the cause remanded with directions that the court order defendant to produce the financial books, records and other documents as prayed for in plaintiff's petition of April 9, 1965, to render an accounting of his income for the period in question, and to make such further child support payments, if any, as may be found to be payable under the terms of the decree as interpreted by this opinion.

Reversed and remanded.

ENGLISH and McCORMICK, JJ., concur.