William A. Phelps, Plaintiff-Appellant, v. The Elgin Academy, Hospital Service Corporation (Blue Cross, an Illinois Medical Service) Blue Shield, Defendants, Hospital Service Corporation (Blue Cross), Defendant-Appellee.

Gen. No. 69–197.

Second District.

July 13, 1970.

Sidney Z. Karasik, of Chicago, for appellant.

Miller, Gorham, Wescott and Adams, of Chicago, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

William A. Phelps, plaintiff, filed a two-count complaint to recover benefits under a group medical and surgical expense insurance contract issued to his former employer, The Elgin Academy, by Hospital Service Corporation (Blue Cross) and Illinois Medical Service (Blue Shield). In Count II of the complaint, the two insurance companies were made defendants. Blue Cross filed a motion for summary judgment in its favor on this count and the plaintiff filed a similar countermotion. The trial court entered summary judgment on behalf of Blue Cross and expressly found that there was no just cause for delaying an appeal of the judgment. The plaintiff has prosecuted this appeal.

In Count II of the complaint, the plaintiff alleged that prior to April 1, 1968, he was employed by The Elgin Academy, and was covered as a "subscriber" under the insurance contracts with the defendant insurance companies. He alleged that premiums were paid by a deduction from his wages; that he assumed, at all pertinent

times, that he was covered by such insurance; that he terminated his employment on April 1, 1968, the same date on which the subscription certificates evidencing his membership and insurance coverage became effective; that the business manager of The Elgin Academy assured him that his insurance would be maintained until he could become eligible for new insurance under a group plan of a new employer; that on September 15, 1968, he entered the Aurora hospital and incurred a hospital bill in the sum of $509.85 and a doctor bill in the sum of $69; that at such time he had not been notified of any cancellation of his insurance and had assumed that he still had coverage; and that it was not until after he submitted these bills that he received notice of the retroactive cancellation of his coverage.

Blue Cross, in its motion for summary judgment and supporting affidavit, asserted, in essence, that the plaintiff had ended his employment no later than April 1, 1968—the date that the certificates were issued and delivered; that no premiums were paid by him after that date; that the subscription certificates provided for their automatic termination upon the cessation of employment, or failure of premium payment; and that the plaintiff was not thereafter entitled to any benefits under the plan. Blue Cross further asserted in its motion and affidavit that subsequent to April 9, 1968, it was advised by The Elgin Academy of the termination of Phelps' employment.

In his countermotion for summary judgment, the plaintiff stated that there was no genuine triable issue of fact; that the defendant took no action to terminate or cancel the coverage until the hospital and medical bills had been incurred; and that the attempt thereafter to give notice of retroactive cancellation constituted a waiver on the part of Blue Cross to assert any defenses it might have to the policy.

In this appeal, the plaintiff contends that The Elgin Academy induced him to believe that he had policy coverage when in fact he did not, and that Blue Cross is estopped by this conduct from denying coverage, notwithstanding the certificate provision for the termination of benefits on the cessation of employment.

The plaintiff has cited numerous cases, but relies most heavily on Neider v. Continental Assur. Co., 213 La 621, 35 So2d 237, 2 ALR2d 846 (1948). In that case, the deceased employee was insured under a group policy which provided that the insurance would cease at the due date of the premium to which the employee failed to make the required contribution, the premiums to be paid monthly in advance. The employer would deduct the monthly premium contributions currently from the insured's payroll earnings; and in event the insured had no earnings, he had to pay his monthly contributions to the employer in cash. Under the accounting procedure used by the employer, wages were paid twice a month, two weeks after they had been earned. When the deceased, because of illness, was dropped from the payroll February 19, he received pay on March 15 for the time he had worked since February 15. However, since the monthly deductions for the insurance premiums were made currently, and the insured was not on the employer's payroll in March, the employer made no deduction for the premium payment due in March. The insured failed personally to make a cash payment in March. His belated payments were refunded, and he died shortly thereafter.

In Neider, the court based its decision in favor of the beneficiary of the policy on equitable grounds, holding that the employer owed to the employee—as part of its duty of good faith—the obligation of informing him of anything required by him to keep the policy in effect, and the time that the payments were due; and that the employer was in this respect, the agent of the insurer.

The court stated that in view of the complicated situation relative to payroll dates and deductions, it was easy to understand how the insured could become confused as to when he was required to make contributions in cash. In the annotation which follows the case in 2 ALR2d 852, it is suggested that the result is primarily attributable to the accounting system used by the employer which, in the court's view of the case, caused the insured to become confused as to when he was required to make cash contributions if he were not working. We believe that the Neider rationale must be limited to the particular facts of that case, and that it is clearly distinguishable from the case at bar.

██ Under less compelling circumstances than those of Neider, we believe that an employee must normally be charged with the knowledge of the terms of a group insurance policy. County of Williamson v. Standard Acc. Ins. Co., 32 Ill App2d 363, 366, 178 NE2d 149 (1961); Roehrig v. Missouri State Life Ins. Co., 251 Ill App 434, 441 (1929); Annotation: 2 ALR2d 852, 853. The plaintiff here relies upon the provisions of his subscription certificate for the benefits which he claims; he cannot do this and at the same time lightly explain away the other clauses of the instrument which preclude his recovery. Borg-Warner Corp. v. Industrial Commission, 23 Ill2d 441, 445, 178 NE2d 323 (1961).

█ The plaintiff's contention—that The Elgin Academy was the agent of the defendant, Blue Shield, in inducing him to believe that he would remain insured after he left the employment of the Academy—is against the great weight of authority. Boseman v. Connecticut General Life Ins. Co., 301 US 196, 204, 57 S Ct 686, 690, 110 ALR 732 (1937); 44 Am Jur2d, Insurance, § 1877. Employers, in doing the various acts relative to group insurance coverage of their employees, act for themselves and their employees, and not as agents for the insurers.

■■ Furthermore, it is neither alleged in the plaintiff's pleadings that The Elgin Academy acted as agent for the defendant, Blue Shield, nor that Blue Shield should be liable by reason of estoppel. The issues in litigation must be framed by the pleadings. An issue can neither be sustained by evidence absent the corresponding pleading, nor by a pleading without supporting evidence. Burke v. Burke, 12 Ill2d 483, 487, 147 NE2d 373 (1958); Broberg v. Mann, 66 Ill App2d 134, 137, 213 NE 2d 89 (1965). Parenthetically, we might add that while the plaintiff has cited numerous cases supporting the rule that an insurance company may waive policy provisions, in all of the cases cited, the companies were either engaged in a longstanding business practice which constituted a waiver, or were deemed to have had knowledge through an agent of circumstances giving rise to a waiver of the policy provisions. This is not the situation in the case at bar.

■■ The parties hereto agree that there was no triable issue of fact, and that the case was one properly to be decided on summary judgment. For the reasons hereinabove set forth, we believe that the judgment of the trial court was correct and that it must, therefore, be affirmed.

Our decision pertains only to Count II of the complaint and does not purport to decide the liability of The Elgin Academy, if any, as asserted in Count I of the complaint.

Judgment affirmed.

MORAN and SEIDENFELD, JJ., concur.