*In re* ESTATE OF PETER WILLIAM ALBRECHT, Deceased.—(JANET ALBRECHT, Adm'rx, Plaintiff-Appellee, *v.* NORTH AMERICAN LIFE ASSURANCE COMPANY, Defendant-Appellant.)

(No. 73-343;

Second District (1st Division)—April 28, 1975.

Brady, McQueen, Martin, & Callahan, of Elgin (James L. Martin, of counsel), for appellant.

Geister, Schnell, Richards, & Brown, of Elgin, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiff Administratrix sued the insurance company on the theory that, under the terms of a group life insurance policy issued by it to her deceased husband's employer, the Marison Company, he was an insured. At the close of all of the evidence, the court entered judgment for the plaintiff. Defendant has appealed, contending the deceased never became an insured under the group insurance contract because no application for insurance was ever signed by him. We agree and, therefore, reverse the judgment.

■■ The facts are rather simple. Defendant issued a group life insurance policy to the Marison Company on February 2, 1960. The parties agree that this policy was in effect at all times material to this action. The contract provided, in part:

"* * * An Employee shall become eligible for insurance hereunder * * * on the day following the date he completes three months of continuous active service with the Employer.

An Employee shall become insured hereunder * * * on the date of completion of a written application for insurance or on the date on which he first becomes eligible, whichever is later * * *."

The deceased was employed by the Marison Company on August 25, 1971, and first became eligible for coverage under the policy on November 25, 1971. Deceased terminated his employment with the Marison Company 4 days later. He died approximately 3 weeks later apparently as the result of injuries that he sustained in an automobile accident.

The parties agree that, by virtue of another provision of the life insurance contract, the deceased would have been insured under the contract at the time of death provided that deceased had become insured before terminating his employment with Marison Company. The parties further agree that deceased never completed a written application for insurance before or during the 4 days that he was eligible for insurance under the

above quoted terms of the contract. In fact, it appears from the record that deceased was never given an application to fill out. The question below and the question here on appeal is whether or not the deceased was insured under the contract in view of his failure to complete the application. Resolution of this question depends on whether the requirement to fill out an application was ambiguous, whether it was a condition precedent, and finally, whether the failure to give an application to deceased was chargeable to the defendant on the theory that Marion Company acted (in this case failed to act) as defendant's agent.

■■ Defendant has argued, and we think rightly, that the provisions of the contract set out above were clear and unambiguous. The provision relating to when an employee becomes insured states that he does so when he becomes eligible "or" when he completes an application for insurance, "whichever is later." Plaintiff has maintained that this created an ambiguity in that the word "or" suggests that an employee becomes insured when he does one or the other of two things. Plaintiff is correct; up to a point. The language "whichever is later" is that point. Indeed, the only possible meaning is that both things must be done since one thing cannot logically occur later than another unless that other thing has occurred. Thus, the employee becomes insured only after he becomes eligible and completes an application, "whichever is later." Thus, the contract provision is not ambiguous since "[a]n ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning. *Whiting Stoker Coal Co. v. Chicago Stoker Corp.*, 171 F.2d 248 (7th Cir.); 17A CJS, Contracts, § 294." (*First National Bank v. Victor Comptometer Corp.* (1970), 123 Ill.App.2d 335, 341, 260 N.E.2d 99.) In the present case, the wording could admittedly and probably should have been made more clear; yet, the wording used was clearly susceptible to only one logical interpretation. The wording used was similar to the lamentable situation which occurs occasionally in our language; the double negative. The wording, however tricky, is susceptible to only one interpretation. It is therefore not ambiguous.

■■ The next question is whether the requirement of filling out an application constituted a condition precedent to obtaining life insurance. A condition precedent is one which must be performed before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform (*American Insurance Co. v. Rosenberg* (1960), 28 Ill.App.2d 357, 171 N.E.2d 662). Defendant has argued, and again we think rightly, that the requirement was a condition precedent. This is because the application constituted the only means of obtaining from the employee an affirmative sign that he

wished to be covered under the group plan. This is so even where the employer pays the premium as is the case here. The possibility exists, albeit remote, that an employee might not want to participate in the plan if only for tax reasons. So long as there is a possibility that an employee might not want coverage under a group plan and can elect not to have it, as is the case here, an affirmative showing by the employee (here in the form of an application) is a condition precedent to obtaining insurance coverage. Even though the result may seem harsh, a condition precedent must be performed or no contractual liability results. There are, for example, a number of cases in which the group policy contained language requiring that an employee be actively at work on the date of his eligibility which concluded that, even though the employee was not at work because the plant was closed for inventory or totally disabled so as to be unable to work, he was yet not insured. See *Aetna Life Ins. Co. v. Smith* (1954), 37 Ala. App. 543, 71 S.2d 846; *Gilford v. Emergency Aid Ins. Co.* (1949), 252 Ala. 311, 40 S.2d 868; *McLean v. Metropolitan Life Insurance Co.* (1957), 78 Ohio L. Abs. 464, 153 N.E.2d 349; *Jackson v. Metropolitan Life Ins. Co.* (1973), 34 Ohio St. 2d 138, 296 N.E.2d 679; and *Williams v. Metropolitan Life Insurance Co.* (1969), 448 S.W.2d 295.

■■■ The deceased never completed an application for insurance. He was, therefore, not insured unless, as contended by plaintiff, the Marison Company acted as agent for the defendant thereby estopping defendant from denying coverage to decedent, or defendant somehow waived the conditions precedent. None of these things happened. First, plaintiff never alleged in the pleadings that Marison Company acted as agent for defendant; nor did plaintiff allege that defendant was estopped thereby from denying coverage. "* * * The issues in litigation must be framed by the pleadings. An issue can neither be sustained by evidence absent the corresponding pleading, nor by a pleading without supporting evidence. *Burke v. Burke*, 12 Ill.2d 483, 487, 147 N.E.2d 373 (1958); *Broberg v. Mann*, 66 Ill.App.2d 134, 137, 213 N.E.2d 89 (1965). * * *" (*Phelps v. Elgin Academy* (1970), 125 Ill.App.2d 364, 369, 260 N.E.2d 864.) Second, the general rule is that an employer acts as agent for its employees and not as agent for the insurer when it procures a group policy and does whatever administrative duties are required to obtain and preserve the policy (*Phelps v. Elgin Academy* (1970), 125 Ill.App.2d 364, 368, 260 N.E.2d 864.) Exceptions to this rule are few and the case cited to us by the plaintiff (*Anderson v. Continental Casualty Co.* (1968), 96 Ill.App.2d 302, 238 N.E.2d 634) is not applicable here because it involved the exceptional situation where, in addition to their regular duties, the trustees (in a position similar to Marison Company) paid its union mem-

ber's claims on behalf of the insurance company for which it was later reimbursed. Nor is the Louisiana case cited by plaintiff applicable (*Neider v. Continental Assurance Co.* (1948), 213 La. 621, 35 S.2d 237) for the reasons stated by this court (in *Phelps v. Elgin Academy* (1970), 125 Ill.App.2d 364, 367-368, 260 N.E.2d 864) where we limited *Neider* to its own facts. In any event, the evidence did not sustain such a theory; nor did it sustain a theory of waiver. The defendant's employee testified that the company's policy was to recommend that Marison Company have its employees fill out the application forms when the employees started work. In that way the employees would have been insured when they became eligible after 3 months' employment. Had that been done here there never would have been a lawsuit. But Marison Company did not follow the recommendation. Instead, it waited until employees became eligible—then it gave them the forms to fill out. There was no evidence that defendant ever acquiesced to Marison Company's practice. They never paid a claim like this one or considered an employee to have been insured without having met the two conditions precedent. While it is true that the defendant's employee at first verbally indicated that the claim might be paid; nevertheless, he recanted after determining that no application form had been filled out and in a letter explained his reasons. A reading of the record indicates that the verbal concession to pay the claim was made at a time prior to full knowledge of the affair. Therefore, there was no conduct by defendant which could constitute a waiver.

We therefore reverse the judgment of the trial court.

Reversed.

SEIDENFELD, P. J., and GUILD, J., concur.