CAROL SUE ROBERTS, Plaintiff-Appellant, v. BOARD OF EDUCATION OF AUBURN COMMUNITY UNIT SCHOOL DISTRICT NO. 10, SANGAMON COUNTY, Defendant-Appellee.—GARY T. HAYES, Plaintiff-Appellant, v. BOARD OF EDUCATION OF AUBURN COMMUNITY UNIT SCHOOL DISTRICT NO. 10, SANGAMON COUNTY, Defendant-Appellee.

Fourth District    Nos. 4—84—0848, 4—84—0849 cons.

Opinion filed June 18, 1985.

Drach & Deffenbaugh, P.C., of Springfield, for appellants.

Richard A. Hollis, of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On February 10, 1984, and February 14, 1984, plaintiffs, Carol Sue Roberts and Gary T. Hayes, respectively, initiated separate suits in the circuit court of Sangamon County against defendant, board of education of Auburn Community Unit School District No. 10, Sangamon County. Each plaintiff sought reimbursement for medical and hospital expenses incurred by them directly or on behalf of a dependent. During September 1983, each plaintiff asserted that the defendant had breached an obligation to provide medical and hospital insurance for them during that month. The cases were consolidated for trial. After a bench trial, the circuit court found for defendant in each case. Plaintiff's separate appeals have been consolidated in this court. We affirm in both cases.

An unusual set of circumstances gave rise to this dispute. Prior to

and during the 1982-83 school year, plaintiffs were tenured teachers for the defendant. Plaintiff Roberts worked part time, while plaintiff Hayes worked full time. Due to a reduction in force for the defendant school district, the services of both plaintiffs were terminated effective the end of the 1982-83 school year. Section 24—12 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 24—12) states that when a tenured teacher's services are terminated in this manner, the teacher shall be paid "all earned compensation on or before the third business day following the last day of pupil attendance in the regular school term." However, a practice had developed in the defendant district to permit these teachers to receive their pay over a 12-month period, receiving the balance of their earned pay not in a lump sum at the end of the term but receiving paychecks at the end of June, July and August.

The procedure of permitting the discharged teachers to receive their final pay in installments was developed as a concession to them. The Horace Mann Insurance Company (Horace Mann), which provided medical and hospitalization insurance to the employees of defendant under a group policy, had permitted discharged teachers to continue coverage as long as premiums were paid for them. Under the collective bargaining agreement between the Auburn Education Association and the defendant, the defendant paid the portion of the premium which covered the benefits to the teacher and deducted from the teacher's salary and paid over to the insurance company the portion of the premium which covered the teachers' dependents. The practice which had developed in regard to teachers terminated because of a reduction in force was for the defendant to deduct the entire premium to cover both the former teacher's coverage and the teacher's dependent coverage. The premium deducted and paid in a given month gave coverage for the succeeding month. Thus, the deduction from the final August payment to the teacher paid a premium for coverage through the month of September.

Although the nature of the arrangements by which plaintiffs were to be paid during the summer of 1983 is disputed, they did receive paychecks towards the end of June, July and August, with deductions made to cover insurance premiums. These deductions were applied toward the premium for the group policy to cover the next month at the end of June and July. However, the defendant's policy with Horace Mann expired on July 1, 1983. Notice had been given that the premium on a new policy would be much higher. The Auburn Education Association and defendant were both dissatisfied with the amount of the increase. By agreement between defendant and Horace Mann,

the policy was extended to cover the months of July, August, and September, with defendant paying for the entire amount by which the premium had been increased. In early September, agreement was reached to enter into an insurance contract with another carrier. A new policy with another carrier was obtained in early September 1983, with the policy taking effect as of September 1, 1983. Agreement was reached with Horace Mann to terminate their policy effective September 1, 1983.

The defendant deducted money from each of plaintiff's final payments in August 1983 just as it had done in the previous months of June and July, but this money was never applied to the payment of insurance to cover plaintiffs. The new carrier was not subject to the tacit arrangement with Horace Mann. The new contract gave no coverage to plaintiffs. As the Horace Mann contract had been terminated by agreement, Horace Mann was no longer liable to pay benefits to plaintiffs. It would appear that the special situation of plaintiffs was overlooked when the old contract with Horace Mann was terminated and the new agreement entered into. Given the existence of the new contract, there was nothing defendant could have done with the money deducted which would have provided coverage to plaintiffs unless some very special type of policy could have been issued for the one-month period.

Dr. James Doglio, superintendent of the defendant district, testified that both plaintiffs contacted him after their discharge and requested that they receive their money through the summer so that they might retain insurance coverage. Both plaintiffs testified that they could not remember any such meeting. Russell Nation, the local agent for Horace Mann, testified that he talked with both plaintiffs in September, explained to them that the Horace Mann policy was terminated, and told them they would have a right to convert their insurance coverage to an individual policy which had some but not all of the benefits of the former group policy by which plaintiffs were insured. Plaintiff Roberts accepted the offer and purchased the converted policy, thereby obtaining some substantial coverage that provided her with coverage for some of the medical and hospital expenses she incurred in September 1983. Plaintiff Hayes refused to obtain a converted policy.

Plaintiffs maintain that the defendant was the agent for the plaintiffs in obtaining medical and hospital insurance for them and that after making the deduction for a premium to cover that type of insurance for September 1983, defendant became obligated to plaintiffs to procure that type of insurance. In *In re Estate of Albrecht* (1975), 27

Ill. App. 3d 839, 327 N.E.2d 317, and *Phelps v. Elgin Academy* (1970), 125 Ill. App. 2d 364, 260 N.E.2d 864, questions arose as to whether a plaintiff or a plaintiff's dependent was covered by group insurance policies. Conduct on the part of the employer might have bound the insurer to extend coverage if the employer had been an agent of the insurer. However, the courts ruled that the employer was ordinarily an agent of the employees for purpose of obtaining group insurance rather than an agent for the insurer. Plaintiffs maintain that here, the defendant was the agent of plaintiffs to procure coverage for them.

Some decisions in other States have ruled upon the nature of the duty of an employer to its employees in regard to the procurement and maintenance of group insurance covering employees. In *Bushman v. Pure Plant Food International, Ltd.* (S.D. 1983), 330 N.W.2d 762, an employer allowed a group medical insurance policy to lapse without informing his employees that this would take place. The employer had agreed to pay the full premium for the policy. Although the employee resigned 15 days after the lapse, the court held that because plaintiff's loss, which would have been covered had the policy not lapsed, had occurred before plaintiff left the employment, the employer was liable to the employee for the loss. In *Dawes Mining Co. v. Callahan* (1980), 246 Ga. 531, 272 S.E.2d 267, *without consulting the employees,* the employer had entered into a group insurance policy which had more restricted benefits than a previous policy. An agent of the insurer, in the presence of an agent for the employer, misinformed the employees that the coverage was the same as in the previous policy. The employer was held to be an agent for the employees and to have violated his fiduciary duty to them. Similarly, in *Dinnan v. Totis* (1981), 159 Ga. App. 352, 283 S.E.2d 321, an employer who had provided a group health benefit policy for its employees permitted the policy to lapse without notifying the employees. The employer was held to be liable to his employees for benefits the employees would have received had the policy been in force.

Closest to the instant case is *Woodman Co. v. Adair* (1982), 164 Ga. App. 603, 294 S.E.2d 579, where, upon termination of employment, the employee was advised by his employer that his medical and hospitalization insurance group policy furnished by the employer would continue for 30 days. However, the plan actually required the employee to obtain a converted policy in order to remain insured. A judgment for the former employee and against the former employer for the amount of an uncovered loss suffered by the employee in the 30-day period was affirmed. The court deemed the giving of the erro-

neous advice to breach a duty owed by the former employer to the former employee.

The case on appeal differs substantially from any of the cases cited.

The *Dawes* court explained that the employer is the agent for the employees in some aspects of obtaining and maintaining a group insurance policy for the employees but not in other aspects. Here, the new group insurance policy was not obtained without consulting the employees as in *Dawes*. Rather, it was obtained at the request of the bargaining agent for the teachers and after consulting and negotiating with that agent. Under these circumstances, the defendant was not an agent for the employees in obtaining the insurance. The defendant did not breach any duty to the plaintiffs in obtaining substitution of a new policy in place of the old one even though the substitution terminated the concession from Horace Mann whereby teachers whose employment had been terminated were enabled to gain continued full coverage for several months. Once the new policy was in force and the old one at an end, plaintiffs did receive reasonable notice of what had happened. However, it was then too late for plaintiffs to fully rectify the situation. Plaintiff Roberts partially mitigated her loss by exercising her rights to convert pursuant to the Horace Mann policy. Plaintiff Hayes refused to do this.

Because plaintiffs' employment terminated prior to the summer of 1983, when defendant was making deductions from plaintiffs' payments due for periodic payments of salary, defendant's duties to plaintiffs were somewhat less than they would have been had plaintiffs still been in defendant's employment. Unlike in *Woodman,* where the plaintiff's employment had also terminated prior to the incursion of the loss, defendant did not give either plaintiff any inaccurate advice. Nor did the defendant stand by while others gave bad advice as in *Dawes*. Defendant did deduct from plaintiffs' last salary payment in late August a sum for an insurance premium for September. In this respect, defendant may well have been plaintiffs' agent even though it was doing this as a concession to the plaintiffs to enable them to take advantage of the tacit arrangement whereby Horace Mann permitted a terminated teacher to have continued coverage during the summer and into September as long as they were still receiving salary payments. Defendant had a duty to apply the withheld sums to an available insurance policy that would give plaintiffs the desired coverage. Had such a policy been available, defendant would have been in breach of that duty. As there was no available policy there was no breach.

Based on any reasonable interpretation of the evidence, the trial court properly found for the defendant. We affirm the judgment entered on that finding.

Affirmed.

McCULLOUGH and MORTHLAND, JJ., concur.