MYRNA E. McWHITE, Guardian of the Estate of Sidney McWhite, III, a Minor, Plaintiff-Appellant, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *et al.*, Defendants (Helen McWhite, Defendant-Appellee).

First District (4th Division)   No. 84—2955

Opinion filed February 6, 1986.—Rehearing denied April 3, 1986.

Anagnost & Anagnost, of Chicago (Catherine C. Anagnost, Themis Anagnost, and Gerald M. Chapman, of counsel), for appellant.

Oliver M. Spurlock, of Chicago, for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff brought this action on behalf of her minor son to have the proceeds of certain group life insurance policies on the life of her son's father, now deceased, paid to her for the benefit of the minor rather than to defendant, the father's second wife. Pursuant to a motion made by defendant, the trial court ordered distribution of the insurance proceeds and the interest earned thereon in accordance with a settlement agreement between the parties, providing plaintiff with $170,000 of the proceeds in question, and allocating $50,000 of the proceeds to the defendant.

On appeal, plaintiff contends that the minor son is entitled to all of the proceeds of the policies in question. Plaintiff asserts that the trial court erred when it granted defendant's motion for judgment in accordance with the settlement agreement because: (1) the settlement agreement was not legally enforceable since it was never encom-

passed and approved in an order signed by the trial court; (2) this court's decision in *In re Schwass* (1984), 126 Ill. App. 3d 512, 467 N.E.2d 957, is grounds for repudiating the settlement agreement; (3) the terms of the divorce judgment establish that the minor son has a superior equitable right in the entire proceeds over the claimed rights of the second wife; and (4) the trial court failed in its duty to protect the rights and interests of the minor son.

We affirm the decision of the trial court.

BACKGROUND

Plaintiff, Myrna McWhite (Myrna), is the first wife of Sidney McWhite, Jr. (Sidney), now deceased. One child, Sidney McWhite III (Sidney III), presently a minor, was born to Myrna and Sidney. On June 9, 1978, Myrna and Sidney were divorced by a judgment of dissolution of marriage entered in the divorce division of the circuit court of Cook County. The portion of the judgment of dissolution relevant to this appeal decreed as follows:

"*Insurance*:

\* \* \*

(b) The husband shall name the minor child of the parties as the irrevocable beneficiary in any and all life insurance policies maintained by his employer until said child reaches his majority or completes his college education, whichever event first occurs. \*\*\*"

At the time of the dissolution of Myrna's and Sidney's marriage, Sidney's employer, Graver Industries (Graver), maintained for the benefit of Sidney $40,000 of group life insurance coverage. In addition, Sidney voluntarily purchased an additional $40,000 of group life insurance coverage the premium for which was paid for through Sidney's payroll deductions. In September 1978, some three months following the McWhite divorce, certain changes took place in the insurance plan offered to Graver employees. Consequently, Sidney purchased through Graver two additional life insurance policies, one for $20,000 of basic life coverage and another for $200,000 of accidental death coverage.

Two years later, in December 1980, Sidney married his second wife, defendant Helen McWhite (Helen). The following January, Sidney executed a change of beneficiary form to include Helen as co-beneficiary of his life insurance policies along with Sidney III. On July 16, 1982, Sidney died. His death was determined to be the result of an accident as defined within the meaning of the insurance policies which are the subject of this cause of action.

After Sidney's death, both Myrna, as guardian of the estate of Sidney III, and Helen claimed rights to the insurance proceeds. With leave of court, the insurance companies providing Sidney's coverage deposited the proceeds of the policies with the clerk of the court. On May 10, 1984, pursuant to a motion filed by Myrna's attorney, the trial court entered an order granting summary judgment for $80,000 in favor of Myrna, as guardian of the estate of Sidney III. The $80,000 summary judgment represented the amount of insurance in existence at the time that the judgment of dissolution of Myrna's and Sidney's marriage was entered by the circuit court. The proceeds remaining in dispute total $220,000, and represent the two after-acquired insurance policies not in existence at the time of the judgment of dissolution. The $80,000 summary judgment of May 10, 1984, is not before this court as part of this appeal.

A trial was set for September 12, 1984, in order to determine the respective rights of Sidney III and Helen in the proceeds of the two after-acquired policies. On that date, the parties, guided by the trial court, engaged in lengthy settlement negotiations. The parties agreed that Sidney III would receive $170,000 of the proceeds and that Helen would receive $50,000 of the proceeds. The agreement was orally approved by the trial court, who instructed the attorney representing Sidney III's interests (Myrna's attorney) to prepare an order embodying the terms of the settlement agreement. Because the hour was late, the matter was continued for the purpose of preparing such an order.

The written order was prepared by counsel for Myrna as directed by the trial court and on September 21, 1984, Helen's attorney confirmed the accuracy of the order when it was read to him over the telephone. Subsequently, Myrna's counsel brought the order to court to obtain the trial judge's signature. However, at that time the trial judge was tending to other matters on his docket and could not sign the order. Consequently, Myrna's attorney returned to her office with the unsigned order. Counsel for Myrna alleges that it was then that she discovered this court's decision in *In re Schwass* (1984), 126 Ill. App. 3d 512, 467 N.E.2d 957, which she asserts is grounds for repudiating the September 12, 1984, settlement agreement entered into by the parties and orally approved by the trial court.

Myrna's counsel thereupon filed a motion urging the trial court to "re-examine" the settlement agreement in light of the *Schwass* decision and the trial court's duty to protect the rights and interests of Sidney III, a minor. Helen's counsel subsequently filed a motion for judgment in accordance with the settlement agreement arguing

that the settlement agreement should not be set aside merely because of Myrna's misapprehension of the existing law.

The trial court conducted hearings on the parties' respective motions on October 12, 1984, and November 5, 1984. On the November 5 date, the trial court denied Myrna's motion for summary judgment and granted Helen's motion for judgment in accordance with the settlement agreement. On November 28, 1984, the trial court entered its written order distributing the $220,000 worth of insurance proceeds pursuant to the terms of the September 12, 1984, settlement agreement: $170,000 of the proceeds plus the interest earned thereon to Myrna, as guardian of the estate of Sidney III; and $50,000 of the proceeds plus the interest earned thereon to Helen, Sidney's second wife.

For the reasons noted, Myrna, as guardian of the estate of Sidney III, now appeals the trial court's order of November 28, 1984, contending that Sidney III is solely entitled to all of the proceeds of his father's life insurance policies.

Opinion

The determinative issue in this case is whether, pursuant to the terms of the divorce judgment dissolving Myrna's and Sidney's marriage, Sidney III is entitled to the entire proceeds of the insurance policies purchased by Sidney after the date of the divorce. Myrna, Sidney's first wife, contends that their minor son is entitled to the entire proceeds pursuant to this court's decision in *In re Schwass* (1984), 126 Ill. App. 3d 512, 467 N.E.2d 957. Helen, Sidney's second wife, on the other hand, contends that the parties are bound by the September 12, 1984, settlement agreement.

I

■ We first consider the procedural question raised by Myrna as to whether the terms of the September 12, 1984, settlement agreement were binding on the parties pursuant to Illinois Supreme Court Rule 272 (87 Ill. 2d R. 272).

Myrna contends that the trial court erred when it granted Helen's motion for judgment in accordance with the September 12, 1984, settlement agreement because the trial court based its decision on the mistaken belief that the terms of the settlement agreement were final and binding on the parties. She asserts that the trial court's decision was contrary to Illinois Supreme Court Rule 272, which governs finality of judgments. 87 Ill. 2d R. 272.

Supreme Court Rule 272 states in part that, "If at the time of

announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed." 87 Ill. 2d R. 272.

The purpose of this rule was to resolve the difficulties which had arisen regarding the timeliness of an appeal where an oral pronouncement of judgment from the bench preceded the entry of a written judgment order by the clerk of the court. (*West v. West* (1979), 76 Ill. 2d 226, 390 N.E.2d 880, *on remand* (1979), 77 Ill. App. 3d 828, 396 N.E.2d 1382; *Landis v. Miles Homes Inc.* (1971), 1 Ill. App. 3d 331, 273 N.E.2d 153.) Illinois courts have interpreted this rule to mean that, in the interim between the announcement of a final judgment in which the judge requires the submission of a written order and the actual signing of that written order, the proceedings are in a state of temporary abeyance, the oral pronouncements being neither binding nor appealable. (See *Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 470 N.E.2d 290.) The practical consequence of this is that, "prior to the filing of the signed judgment, the court is free, upon its own motion, or that of any party, to alter its pronouncements." *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267.

In the case at bar, on September 12, 1984, the trial court approved a settlement agreement between the parties providing Myrna on behalf of Sidney III with $170,000 of the life insurance proceeds in question, and allocating $50,000 to Helen, the second wife. At that time, the trial judge instructed Myrna's counsel to draft an order to be signed by the trial court reflecting these terms. Under Supreme Court Rule 272, the trial court's oral approval of the terms of the settlement agreement was therefore not binding on the parties. Rather, the proceedings were in a state of temporary abeyance, with the court being free to alter its oral pronouncement up until the time that the written order was entered of record. It was during this period of temporary abeyance that Myrna's counsel moved for summary judgment, in which she asked the trial court to "re-examine" the terms of the September 12, 1984, settlement agreement in light of this court's opinion in *In re Schwass* (1984), 126 Ill. App. 3d 512, 467 N.E.2d 957. Subsequently, Helen filed her motion for summary judgment requesting that the terms of the settlement agreement be upheld.

On October 12, 1984, a hearing was held on the parties' conflicting motions for summary judgment. After hearing arguments by both parties, the trial court stated that it was inclined to think that

the September 12, 1984, settlement agreement was binding on the parties, but that it would nevertheless consider Myrna's argument based on the *Schwass* case.

On November 5, 1984, the parties appeared to debate whether the *Schwass* case principle was a proper ground for repudiating the settlement agreement, and on November 28, 1984, the trial court allowed Helen's motion for judgment in accordance with the terms of the settlement agreement.

■ We do not see the events explicated above to be in conflict with Supreme Court Rule 272. Indeed, the record indicates that the trial court acted well within the directives of the rule by conducting a full hearing on the merits of the parties' respective motions prior to entering its written order upholding the terms of the September 12, 1984, settlement agreement.

We note that the trial judge made it clear that, in his opinion, the *Schwass* case was not dispositive of the issues at hand. This contradicts Myrna's contention that the decision upholding the terms of the settlement agreement was based upon the trial court's misapprehension that the oral pronouncement of the settlement agreement was binding on the parties. Although the oral pronouncement was never truly binding on the parties prior to entry of the trial court's written order, entry of that written order on November 28, 1984, caused the terms of the agreement to become binding. Therefore, Myrna's contention that the trial court's decision is not binding on the parties because it violated Supreme Court Rule 272 is doomed.

## II

The issue at this point becomes one of whether the trial court was correct in its determination that the *Schwass* case, when applied to the terms of the divorce decree, was not a proper ground for repudiating the settlement agreement. Myrna contends that under the *Schwass* decision, Sidney III would have been entitled to the entire proceeds of the two after-acquired policies still in dispute. Helen, like the court below, posits that *Schwass* is not an appropriate basis for repudiating the entry of the terms of the September 12, 1984, settlement agreement. We agree with the position taken by Helen and the trial court.

## A

In *Schwass*, a 1971 marital settlement agreement named the parties' minor children (plaintiffs) as co-equal irrevocable beneficiaries on all life insurance policies then existing on the life of the husband. At

that time, the husband had two group insurance policies through his employer.

In 1978, the husband remarried and subsequently named his second wife (defendant) as beneficiary of these policies (as did Sidney in the case at bar). He died in 1982. At the time of his death, one of his two children from the first marriage had obtained majority, and the group carrier on one of the two policies in existence at the time that the first marriage was dissolved had been changed by the employer, increasing the proceeds.

Consequently, the first wife, as guardian for the children of the first marriage, sought imposition of a constructive trust upon the life insurance proceeds paid to the second wife. The trial court entered judgment in favor of the children, ruling that under the terms of the marital settlement agreement the children, as co-equal beneficiaries of the husband's life insurance proceeds, were entitled to a constructive trust on the total amount of insurance proceeds from both policies received by the second wife.

The second wife appealed the trial court's decision, arguing that she had a superior equitable interest in the insurance proceeds over the child who had obtained majority; and that the younger (minor) child's equitable interest was limited to the policies and amounts in force at the time of judgment of divorce. In reaching its decision, the *Schwass* court relied upon the familiar rule that "[w]hen marital settlement agreements require an insured to maintain life insurance for the benefit of a particular beneficiary, that beneficiary has an enforceable equitable right to the proceeds of the insurance policies against any other beneficiary except one with a superior equitable right. [Citations.]" *In re Schwass* (1984), 126 Ill. App. 3d 512, 514, 467 N.E.2d 957, 959.

Applying this rule, the *Schwass* court held that the older child of the first marriage no longer had an equitable interest in any of the proceeds because he had obtained majority and was therefore excluded by the terms of the divorce decree. However, the younger (minor) child was deemed to have an equitable interest in one-half of the total increased proceeds by virtue of the provision in the divorce decree making him a co-equal beneficiary in the proceeds. (*In re Schwass* (1984), 126 Ill. App. 3d 512, 516-17, 467 N.E.2d 957, 960-61.) The court reasoned that since the divorce decree did not specify the amount of benefits to which the minor was entitled, and nothing in the record suggested otherwise, the minor was entitled to one-half of all the proceeds, including the enhanced value of the policy the employer substituted for one of the two policies in existence at the time

of the judgment of dissolution.

## B

In the case before us, Myrna analogizes Sidney's after-acquired policies to the substitute policy in the *Schwass* case. She contends that the property agreement in the *Schwass* divorce decree gave the minor child a superior equitable interest over the second wife in a policy which was not in existence at the time of the judgment of dissolution. Therefore, she reasons that the language in the McWhite decree naming Sidney III as the irrevocable beneficiary of "any and all insurance policies maintained by [Graver]" should likewise apply to the two after-acquired policies in this case, giving Sidney III a superior equitable right to the entire proceeds. We do not agree with Myrna's reasoning.

In *Schwass*, the employer had substituted one of the two original policies in existence at the time of the judgment of dissolution with a larger successor policy offered by another carrier. In our view, the significance of *Schwass* is not that the successor policy was held to fall within the purview of the divorce decree giving the minor beneficiary an equitable interest in one-half of the proceeds of the policy itself. The beneficiary already had an equitable interest in one-half of the amount of the proceeds of the original policy giving him a vested interest in the successor policy. (See *Appelman v. Appelman* (1980), 87 Ill. App. 3d 749, 410 N.E.2d 199.) Rather, the real significance of the *Schwass* opinion is that the trial court extended the minor's equitable interest to a one-half interest in the amount of the *increased* proceeds of the successor policy as well. This enhanced equitable interest exceeded the amount of coverage in existence at the time of the judgment of dissolution.

By contrast, Sidney's after-acquired policies in this case (although in excess of coverage in existence on the date of dissolution), were not successor policies to ones in which Sidney III had already obtained an equitable interest at the time of the judgment of dissolution. The after-acquired policies here were additional policies voluntarily purchased by Sidney subsequent to that date. Thus, Sidney III had no equitable interest in these policies on the date of dissolution, and therefore he does not have an equitable interest in these policies now. In our opinion, the *Schwass* case is inapposite to this case. Accordingly, we agree with the trial court's determination that the *Schwass* case, even if applied to the facts of this case, is not a proper ground for repudiating the September 12, 1984, settlement agreement.

### III

The parties also disagree as to whether the terms of the divorce judgment itself establish that Sidney III has a superior equitable interest over Helen in the entire proceeds of the after-acquired policies. The record indicates that the uncertainty of this controversy is what led to the September 12, 1984, settlement agreement in the first place.

As we noted above, the terms of the marital settlement agreement contained in the divorce decree state that Sidney III, as Sidney's minor son, is "the irrevocable beneficiary in any and all insurance policies maintained by [Graver]." Myrna interprets the phrase "maintained by [Graver]" to include any and all coverage made available to Sidney by Graver, regardless of whether Sidney or the company pays the premiums. Under Myrna's interpretation, Sidney's voluntary purchase of the after-acquired policies made available to him by Graver would fall within the terms of the divorce decree entitling Sidney III to the entire proceeds of those policies. On the contrary, Helen interprets the word "maintained" to mean "paid for." Helen asserts that the policies in question were not maintained by Graver since Sidney paid for them through payroll deductions from his wages. Under this interpretation, Sidney's voluntary purchase of the after-acquired policies falls outside of the scope of the language in the divorce decree, and Sidney is not entitled to all (or any) of the proceeds in question.

■ It is well settled that in interpreting the provisions of a divorce judgment, this court seeks to give effect to the apparent intent of the trial court and the interpretations of the parties, and that the normal rules pertaining to the construction of contracts is applied. (*In re Marriage of Arkin* (1982), 108 Ill. App. 3d 103, 438 N.E.2d 957.) In order to do this, we must first attempt to determine the intention of the parties from the language of the instrument in question, unless we find that language to be ambiguous. (*Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 251 N.E.2d 242.) The language is considered ambiguous if it is reasonably susceptible to more than one meaning (*Schwartz v. Schwartz* (1966), 69 Ill. App 2d 128, 216 N.E.2d 505); and it is a question of law for the court to determine whether or not this is true with respect to a particular agreement. *Weber v. Weber* (1979), 77 Ill. App. 3d 383, 396 N.E.2d 43.

■ In the instant case there is no material question of fact that the disputed phrase exists in the divorce judgment. However, the parties do differ as to the interpretation to be given to the phrase.

Although this alone does not render the phrase ambiguous (*White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255), we find the phrase "maintained by [Graver]" to be ambiguous in that it is unclear in its import, and reasonably susceptible to more than one meaning. (See *Schwartz v. Schwartz* (1966), 69 Ill. App. 2d 128, 216 N.E.2d 505.) Under these circumstances, it is our duty as the reviewing court to independently construe the phraseology in question. (*Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 427 N.E.2d 585.) That being the case, we determine as a matter of law that the phrase "maintained by [Graver]" means "paid for by Graver" as Helen asserts in this case.

Our determination above is based on our belief that Helen's interpretation of the phrase in question is more clear and convincing in its provisions than that advanced by Myrna. For example, under Myrna's interpretation, there is no difference between policies purchased by Sidney despite the fact that some may be paid for by his employer, while others may be voluntarily purchased and paid for by him. This is to say that "maintained by [Graver]" is analogous to "available through Graver" or "offered by Graver", both of which we find to be equally confusing when applied to this case. Helen's interpretation of "maintained by [Graver]," on the other hand, exhibits more clarity. Under Helen's interpretation, the phrase would only apply to those policies funded by Graver. We find this to be a more just application of the terms of the divorce judgment. Myrna's position would have eliminated Sidney's ability to purchase from his employer any additional protection for a beneficiary not already named in the divorce decree. Under this interpretation, the named beneficiary's superior equitable interest would have immediately attached to the proceeds of such a policy. We do not read the divorce judgment in this case to limit Sidney so severely or to so broadly construe Sidney III's equitable interest.

We also reject Myrna's argument based on *Phelps v. Elgin Academy* (1970), 125 Ill. App. 2d 364, 260 N.E.2d 864, where the appellate court determined that an employee's voluntary insurance coverage terminated along with the employer-employee relationship. There, like here, the employee paid for his voluntary coverage through payroll deductions from his wages. Myrna asserts that *Phelps* determined that this type of voluntary coverage was maintained by the employer merely because it is dependent upon the employment relationship. We do not agree.

First, Myrna's reliance on *Phelps* is misplaced. *Phelps* is an insurance *coverage* case; whereas coverage is not in dispute in the case at

bar. Here, Sidney's death was clearly covered by the after-acquired policies. The question before us is one of who had the superior equitable right to the proceeds in these policies as between Sidney III and Helen. Second, we do not find the voluntary coverage in this case and in *Phelps* to be as closely tied to the employment relationship as Myrna suggests. Although it is true that the voluntary coverage would not have been available to either employee but for the relationship with his employer, nevertheless it was the employee who paid the premiums. Similarly, in each case the election to purchase the coverage was the employee's own. There is nothing to suggest that either was compelled to purchase the coverage as a condition of employment, or that discontinuing the coverage would have extinguished the employment relationship.

Accordingly, we do not view Sidney's employment relationship with Graver to be so closely and inextricably mixed with the voluntary insurance coverage to hold that the after-acquired policies in this case were *de facto* maintained by Graver.

## IV

■ Myrna also contends that it was error for the trial court to allow her, as Sidney III's guardian, to settle a claim belonging to her ward. Myrna bases this argument on her belief that the trial court had a duty to protect Sidney III's rights as a minor by re-examining the settlement agreement in light of the decision in *In re Schwass* (1984), 126 Ill. App. 3d 512, 467 N.E.2d 957. Meanwhile, Helen's response to this argument is that the terms of the settlement agreement should not be set aside merely because Myrna, being unaware of the *Schwass* case, acted under a misapprehension of the law.

## A

Illinois courts have long regarded minors as their special wards, and have been especially vigilant in protecting their rights and interests from prejudice. (See *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 170 N.E.2d 564.) However, Myrna's argument seems misguided given the realization that the record discloses that the trial court did re-examine the settlement agreement in light of the decision in *Schwass*. As we discussed in detail above, the trial court determined that the *Schwass* decision would have made no difference in the outcome of this case. In other words, since the application of *Schwass* to the facts of this case would not provide Sidney III with any additional benefits, the trial court's refusal to repudiate the settlement agreement and apply *Schwass* likewise did not prejudice Sidney III's

rights and interests in this case.

## B

It has also been a long standing tenet of American Jurisprudence that settlement of disputed claims is favored in the law. (See *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 356 N.E.2d 837.) Historically, Illinois courts have furthered this purpose by upholding settlement agreements that parties knowingly and willingly accept. (*Kalman v. Bertacchi* (1978), 57 Ill. App. 3d 542, 373 N.E.2d 550.) Our courts have frequently stated that such agreements will not be set aside absent a showing of fraud, duress, coercion, or mistake, rendering the agreement unconscionable. *Adler Center for Behavior Modification, Inc. v. Chicago Title & Trust Co.* (1984), 129 Ill. App. 3d 1024, 473 N.E.2d 378; see also *Neal v. Lacob* (1978), 31 Ill. App. 3d 137, 334 N.E.2d 435.

■ Since we have already determined that *Schwass* would not have affected the trial court's decision to enter the terms of the settlement agreement of record, there clearly is no issue as to whether Myrna's unawareness of *Schwass* constituted a mistake or misapprehension of law. In addition, the record contains no allegations by Myrna that her consent to the settlement agreement was the result of fraud, duress, or coercion, rendering the agreement unconscionable. On the contrary, the record shows that the settlement agreement was reached knowingly and voluntarily by the parties after lengthy settlement negotiations presided over by the able and concerned trial court. Finally, we note that counsel for Myrna admitted at oral argument that there was no fraud or coercion forcing the settlement agreement. Therefore, both Myrna's and Helen's positions as stated above need not be considered further, since neither argument has any bearing on the outcome of this case.

Accordingly, we find that the terms of the settlement agreement entered of record by the trial court on November 28, 1984, are proper and binding under the circumstances of this case. Thus, for all of the reasons stated above, we affirm the decision of the trial court granting judgment in accordance with the terms of that settlement agreement.

Affirmed.

JOHNSON and McMORROW, JJ., concur.