*In re* MARRIAGE OF ARTHUR ARKIN, Petitioner-Appellee, and PATRICIA ARKIN, Respondent-Appellant.

Second District   No. 81—633

Opinion filed July 28, 1982.

Jerome Feldman, of Chicago, for appellant.

James J. O'Brien & Associates, of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The marriage of Patricia Arkin (now Patricia Frank) and Arthur Arkin was dissolved on October 13, 1977. Custody of their only child, a four-year-old son, was awarded to the wife, respondent herein. The dissolution judgment incorporated a property settlement agreement entered into by the parties on October 5, 1977. Respondent remarried on September 22, 1980, and vacated the marital home on or about October 14, 1980. Prior to that time, the home was listed for sale by petitioner, but it was not sold until May 15, 1981. Paragraph 6 of the incorporated agreement, at issue here, provides as follows:

> "MARITAL RESIDENCE: That the wife shall have the right of exclusive possession of the marital residence commonly known as 1630 Portage Pass, Deerfield, Illinois and legally described on 'Schedule A' attached hereto and made a part hereof through the month of September, 1984, or until the wife remarries if sooner. The wife shall pay all mortgage, insurance and

real estate tax payments for said real estate which have accrued and are payable on October 1, 1977 until she terminates possession of said real estate, except that the husband shall pay the real estate tax installment due November 1, 1977. The husband shall be liable for the payment of mortgage, insurance and real estate tax payments accrued and payable in connection with said real estate prior to October 1, 1977 and subsequent to the wife vacating said real estate. Husband shall reimburse wife for any increased taxes in excess of the final assessed 1976 real estate taxes. That during the period of the wife's exclusive possession, the wife shall pay twenty-five percent of the cost of any necessary exterior decorating and major repairs to said premises, and the husband shall pay seventy-five percent of the cost thereof. In the event the parties can not agree relative to the necessity of any repairs or exterior decorating, - - - - - - - - - this Court reserves the right to adjudicate any such dispute.

That upon the wife vacating the aforesaid real estate, the husband shall pay to the wife twenty-five percent of the then net equity in said real estate in full settlement of the wife's property claims. In addition, the wife shall be reimbursed in an amount equal to one-half the reduction of mortgage principal for said premises from October 1, 1977 until she vacates same. Net equity as used in this paragraph shall be defined as the difference between the then fair market value of said real estate less the then outstanding balance on the mortgage in connection with same.

Should the husband sell the real estate at or about the time the wife vacates same, and should the husband at the time of vacation advise the wife of his intention to sell said real estate, net equity shall be defined as the difference between the sale price and mortgage and the normal selling expenses actually incurred, including title charges, broker's commission, if any, attorney's fees and prorations for real estate taxes."

On June 19, 1981, the husband, petitioner herein, filed a petition for a rule to show cause, for modification of child support and for other relief. *Inter alia*, the petition prayed that the court enter a rule to show cause why the respondent wife should not be held in contempt for a wilful violation of the terms of the judgment agreement, and that she pay immediately all past due realty taxes, mortgage payments and utility expenses as required therein.

On July 6, 1981, the wife also filed a petition for rule to show

cause alleging, *inter alia*, that the petitioner had sold the marital residence and that she had not received her share of the proceeds as set forth in paragraph 6 of the agreement. Her petition further alleged that the attorneys for the petitioner had submitted "letters and documents concerning their determination of what they believed the quarter share to be, but their calculations do not follow the formula prescribed in Paragraph 6 of the [agreement incorporated in the] judgment for dissolution of marriage." Respondent then "suggested" the formula to be applied in order to determine what her quarter share should be as of October 14, 1980, and prayed that the court order the petitioner to pay her $25,145.75.

Following a hearing on the respondent's petition, the court entered its findings on July 20, 1981, *inter alia*, that paragraph 6 of the agreement was not ambiguous; that the respondent wife was not entitled to a reduction of mortgage principal during the term of her occupancy through date of closing on the sale of the home in question; that she was responsible for one-half the morgage payments from the date of her vacation of the home to the date the home was sold; and for realty taxes through January 31, 1981. Based on its findings, the court ordered, *inter alia*, that she receive a balance of $12,282.62 as her one-quarter net equity share.

Because certain other matters raised in the parties' petitions were reserved and/or continued, the court later ordered, on July 23, 1981, that there was no just reason for delaying the appeal or enforcement of the order, and the respondent timely filed a notice of interlocutory appeal.

Respondent seeks reversal of the court's findings that she: (1) is not entitled to one-half of the mortgage principal reduction in the amount of $2,713; (2) must pay one-half of the monthly mortgage payments from October 16, 1980, to May 15, 1981, in the amount of $1,120; and (3) must pay the real estate taxes from October 16, 1980, through January 31, 1981, in the amount of $749. She prays that the cause be remanded with directions that the petitioner pay her the total additional sum of $4,582.

The respondent first argues that the court erred in finding that paragraph 6 of the agreement is unambiguous, contending that the paragraph is susceptible to more than one interpreation; *i.e.*, whether she was entitled to receive reimbursement for one-half the amount of the reduction of the mortgage principal for the premises during the period October 1, 1977, to October 14, 1980, and whether or not she was entitled to receive 25% of the fair market value of the premises at the time she vacated same if the property was not sold at or about

the time she vacated. Since the contract is ambiguous, respondent argues, the court must look to evidence of extrinsic facts in order to clarify the intentions of the parties.

Despite its later finding, the record reveals the court initially determined there was ambiguity in the contract, and allowed the parties to testify. Respondent testified her understanding of the contract was that at the time she vacated the premises, whether or not the house was sold, she would receive 25% of the fair market value of the premises, plus an amount equal to one-half the amount the mortgage principal was reduced from Ocober 1, 1977, to the date of the vacation of the premises.

The petitioner, Arthur Arkin, also testified, but he was not queried about his understanding of paragraph 6. He testified that he listed the property with a real estate broker for $180,000 in September 1980; that between that date and the date the house was sold, May 15, 1981, he lowered the listing price of the house from $180,000 to $169,000 and then to $150,000. He testified he did not discuss with the respondent the listing price or the fact of the signing of the real estate contract, nor did he advise her about the closing on May 15, 1981.

Respondent had testified previously, however, that petitioner knew in early August 1980, that she was going to be leaving, and that at the end of August 1980 there was a discussion between petitioner and his attorney, and respondent, her attorney and her fiance, about the house being put up for sale. Although there was no testimony at the hearing, the record reflects the filing on August 18, 1980, of a stipulation between the parties that the premises were to be placed for sale immediately, that the parties were to agree upon a listing price and a real estate broker, and that in all other respects, paragraph 6 of the agreement would be complied with.

After hearing the testimony of the parties, the court concluded that: "[T]he last paragraph of section 6 of the judgment for dissolution is not ambiguous. I think the language is clear and [the] parties have found themselves in that particular paragraph." After argument, the court also ordered that the parties "equally share the expenses [mortgage payments and real estate taxes] from the time of vacation until closing, May of 1980."

The petitioner husband contends the court was correct in finding the contract was not ambiguous, thereby effectively rejecting the respondent wife's self-serving, subjective testimony as to her interpretation of the agreement which directly contradicted the written terms of the agreement.

Respondent additionally contends that the court erred in refusing to admit two letters which were offered in proof at the hearing and appended to the respondent's brief. The letters were sent to respondent's attorney by petitioner's counsel after the sale of the house, wherein he stated that she was entitled to one-half the mortgage principal reduction for the period October 1, 1977, to May 15, 1981. She argues the letters should have been admitted as extrinsic evidence of the parties' intentions because the contract was ambiguous, and because a client may be bound by admissions made by his attorney in matters relating to the progress and trial of the cause of action. In support, she cites *Bauer v. Saper* (1971), 133 Ill. App. 2d 760, and *Ellison v. Sinclair Refining Co.* (1963), 41 Ill. App. 2d 436. Petitioner counters that since the court found the contract was not ambiguous, it properly excluded the letters because the contract itself affords the only criteria for determining the intentions of the parties, and that offers of settlement are not admissible into evidence as an admission against interest. He cites in support *Prewitt v. Hall* (1969), 113 Ill. App. 2d 198, *Barker v. Bushnell* (1874), 75 Ill. 220, and *Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087.

▪ In interpreting the provisions of a divorce decree, the court seeks to give effect to the apparent intent of the court and the intentions of the parties (*In re Estate of Coleman* (1979), 77 Ill. App. 3d 397, 399), and the normal rules pertaining to the construction of contracts are applicable. (*Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 548.) Thus, the parties' intentions must be determined from the language of the instrument itself unless it is incomplete or the language is ambiguous, in which case extrinsic evidence will be introduced as an aid to interpretation. (*Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 114.) Parol evidence is neither necessary nor proper when an agreement is unambiguous. (*Potocki v. Potocki* (1981), 98 Ill. App. 3d 501, 504.) A contract is ambiguous when the language used is reasonably susceptible to more than one meaning (*Schwartz v. Schwartz* (1966), 69 Ill. App. 2d 128), and the language is not rendered ambiguous simply because the parties do not agree upon its meaning. *White v. White* (1978), 62 Ill. App. 3d 375, 379.

▪▪ The intent of the parties must be determined from the contract as a whole and not from any one clause standing alone. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272.) In the absence of any material question of fact, whether a contract is ambiguous presents an issue of law (*In re Marriage of Adams* (1981), 92 Ill. App. 3d 797, 802), so that a reviewing court may independently construe the contract unrestrained by the trial court's judgment. *An-*

*craft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694.

In our view, the contract is not ambiguous, and the court's finding in that respect was correct. However, the court further found that respondent was *not* entitled to a share of the reduction of the mortgage principal. This finding conflicts with the court's antecedent finding that paragraph 6 is not ambiguous, and is "clear and convincing in its terms and provisions." The last two sections of paragraph 6 must be construed together. These two sections describe what the husband will pay the wife when she vacates the premises. The payment contemplated as "full settlement of the wife's property claims" is 25% of the net equity of the premises, plus reimbursement in an amount equal to one-half the reduction of mortgage principal for said premises from October 1, 1977, until the date of vacation. "Net equity" is then defined two different ways. In the first instance, if the wife vacates the premises and the house is not sold (*e.g.*, the husband resumes occupancy, rents the premises, or it remains vacant), she receives 25% of the "difference between the then fair market value of said real estate less the then outstanding balance on the mortgage in connection with same." In the second instance, if the husband sells the premises "at or about the time the wife vacates same, and should the husband at the time of vacation advise the wife of his intention to sell said real estate, net equity *shall be defined* as the difference between the sale price and mortgage and the normal selling expenses actually incurred, including title charges, broker's commission, if any, attorney's fees and prorations for real estate taxes." (Emphasis added.)

In our opinion, net equity would not be defined a second time in the judgment except for the express purpose of providing an alternate method of calculating, pursuant to the 25% formula, what amount was to be paid to the wife "in full settlement of the wife's property claim" in the event the husband sells the real estate rather than retains it. The net equity defined in the instance of a sale of the premises most certainly was meant to be an alternate settlement, "in addition" to which "the wife shall be reimbursed in an amount equal to one-half the reduction of mortgage principal ***."

This construction of the contract gives full credence to the rule that the intent of the parties must be determined from the contract as a whole and not from any one clause standing alone. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272.) Because the contract is not ambiguous, the court erred by permitting the parties to testify. However, it is apparent respondent's testimony concerning

the reduction of mortgage principal was rejected by the court, since it found she was not entitled to it. Further, respondent's testimony failed to clarify any potential ambiguity in the agreement. Her testimony, in fact, outrightly contradicted the existence of the two different definitions of net equity set forth in the agreement. In her testimony, she maintained that whether she vacated the premises or whether it was sold, she would be entitled to one-quarter of the amount of the difference between the fair market value—rather than the sale price—at the time she vacated the premises, and the outstanding balance on the mortgage. As petitioner's counsel candidly noted during the hearing of this cause, he doubted that the parties had anticipated at the time they signed the agreement that it would take seven months to sell the house; nevertheless, he urged that the terms of the agreement were specific and bound the parties despite the untoward condition of the real estate market.

In sum, although the court improperly allowed the parties to testify in view of the fact the contract is not ambiguous, it does not appear the court's decision was unduly affected by that testimony, and it may be regarded as harmless error. However, the competent evidence before the court (the agreement itself) does not support the court's finding that respondent was not entitled to one-half the mortgage principal reduction. That amount was clearly meant to be "in addition" to her one-quarter share of whichever definition of "net equity" was applicable. As such, the court's decision must be reversed.

With regard to the court's refusal to admit the two letters, if the contract had been determined to be ambiguous, the letters would not only have been admissible, but very relevant to the question of the reimbursement due to her for reduction of mortgage principal. (See, e.g., *Hammer v. Sanders* (1956), 8 Ill. 2d 414, 421; *Ingraham v. Mariner* (1901), 194 Ill. 269, 283-84.) Contrary to the petitioner's argument that the letters were properly excluded on the basis of the general rule that offers of settlement or negotiations therefor are not admissible, no controversy existed between the parties at the time the letters were written (June 1 and 2, 1981) and they could not be characterized as "offers of settlement." Nevertheless, the letters were properly excluded due to the court's determination that the contract was not ambiguous, and no reversal is warranted as to that ruling.

Respondent's final contention is that the court erred in finding that she must pay one-half the mortgage payments for the period after she vacated the premises in October 1980, until the sale thereof in May 1981, and that she must pay the real estate taxes after the date of vacation through January 31, 1981. She points to the first part of

paragraph 6 of the property agreement in the judgment for dissolution, which provides:

> "The wife shall pay all mortgage, insurance and real estate tax payments for said real estate which have accrued and are payable on October 1, 1977 *until she terminates possession of said real estate* ***." (Emphasis added.)

She contends the court's findings constituted a modification of the property agreement and that the court was without jurisdiction to make such a modification. She cites *In re Marriage of Kekstadt* (1980), 85 Ill. App. 3d 952, in support.

In *Kekstadt*, the parties were divorced and a later supplemental judgment was entered which determined the support, maintenance and property rights of the parties. One year later, the wife petitioned the court "For Instructions and Clarification of Supplemental Judgment." Upon this petition, the court entered an order which, in effect, modified the property settlement agreement because it awarded the husband one-half the net proceeds from the sale of the marital residence ($25,495.91), rather than one-half the "appraised price" of the residence ($60,000) as set forth in the supplemental judgment concerning property distribution. On appeal, the wife contended the supplemental judgment was ambiguous and that the court retained its jurisdiction to "clarify" the order. The husband argued the judgment was clear and unambiguous; that the "Petition for Clarification" was merely a subterfuge to obtain modification of the judgment. As such, he maintained the court lacked subject matter jurisdiction to modify a decree entered more than 30 days before.

The appellate court agreed that the terms of the supplemental judgment were not ambiguous, and that the court's purportedly clarifying order amounted to a modification. It then determined the court had lacked subject matter jurisdiction to modify the judgment, citing *Waggoner v. Waggoner* (1979), 78 Ill. 2d 50, and *Lamp v. Lamp* (1979), 73 Ill. App. 3d 713. In reversing and remanding for further proceedings consistent with its opinion, the court noted the specific provisions of section 510(a) of the Illinois Marriage and Dissolution of Marriage Act, to-wit:

> "[P]roperty disposition in a decree of dissolution of marriage 'may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State.' Ill. Rev. Stat. 1977, ch. 40, par. 510(a); *English v. English* (1979), 72 Ill. App. 3d 736, 393 N.E.2d 18." *In re Marriage of Kekstadt* (1980), 85 Ill. App. 3d 952, 956.

The petitioner here does not distinguish *Kekstadt*, contending the parties below were seeking a declaratory judgment and that it is appropriate for a court to entertain a petition by one of the parties for a declaration of their rights under a property settlement agreement incorporated into a judgment for dissolution of marriage. *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184.

■ We find *Roberts* inapposite. In that case, the wife sought a declaration from the court that certain provisions of the property settlement agreement incorporated as a part of the divorce decree were null and void. The court agreed to consider the question, determining that an actual controversy existed between the parties. In the case at bar, the respondent's petition was for a rule to show cause why the petitioner should not be held in contempt for failing to tender her the amount provided for in paragraph 6 of the agreement. It is established that a court in a divorce proceeding retains jurisdiction to enforce its decrees. (*People ex rel. Kazubowski v. Ray* (1971), 48 Ill. 2d 413, 417, *cert. denied* (1971), 404 U.S. 952, 30 L. Ed. 2d 268, 92 S. Ct. 271.) The court's order here, however, purportedly entered in enforcement, constituted in our view a modification of the property agreement. Paragraph 6 of the property agreement unambiguously provided that the respondent was to pay the mortgage and real estate taxes on the premises only until she terminated possession, which was in October 1980. The "proration" referred to in the last sentence of paragraph 6 was clearly the proration of real estate taxes which is part of the "normal selling expenses" which would be incurred upon sale of the premises and in no way may be construed to mean a proration of real estate taxes between the husband and wife until the date the premises were sold. *Cf. In re Marriage of Adams* (1981), 92 Ill. App. 3d 797, 805 (wherein the court affirmed a judgment finding the husband was *not* responsible for one-half of the expenses incurred in maintaining the former marital residence after the wife had *vacated* the premises, since the parties had agreed the wife would be solely responsible for same until *sale* of the home).

■ Per section 510 of the Illinois Marriage and Dissolution of Marriage Act and *Kekstadt*, the court below lacked subject matter jurisdiction to enter such a modification. (Ill. Rev. Stat. 1981, ch. 40, par. 510(a); *In re Marriage of Kekstadt* (1980), 85 Ill. App. 3d 952, 956.) Accordingly, the court's findings that the respondent owed petitioner for 3½ months of mortgage payments covering the period after she vacated the premises until the sale in May 1981, and for real estate taxes through January 31, 1981, are hearby reversed.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed and remanded for entry of an order consistent with this opinion.

Reversed and remanded.

LINDBERG and REINHARD, JJ., concur.