HOME INSURANCE COMPANY *et al.*, Plaintiffs, v. MARCIA HORTEGA, Indiv. and as Guardian and Next Friend of Lonna Hortega *et al.*, *et al.*, Defendants (Marcia Hortega, as Guardian of Lonna Hortega *et al.*, Counterplaintiff-Appellant; Home Insurance Company *et al.*, Counterdefendants-Appellees).

Third District   No. 3—89—0200

Opinion filed February 8, 1990.

Melvin H. Hoffman, of Hoffman, Mueller & Creedon, of Ottawa, for appellant.

Ira B. Goldstein, of Ira B. Goldstein, Ltd., of Joliet, for appellees.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

Following the death of Joseph Hortega, the plaintiff Aetna Life Insurance Company and the plaintiff Home Insurance Company filed an interpleader action (Ill. Rev. Stat. 1987, ch. 110, par. 2—409) against Mary Sue Hortega, the decedent's widow, and Marcia Hortega, the decedent's ex-wife and guardian of his children. The action sought to resolve competing claims to the proceeds of two insurance policies the decedent held with the plaintiffs. The trial court awarded the proceeds from the Aetna policy to the guardian and the proceeds from the Home policy to the widow. The guardian appeals.

The record shows that the decedent and the guardian were divorced on May 24, 1985. The divorce decree stated that "[t]he respondent shall keep as beneficiaries on his life insurance with Northern Illinois Gas Company, Marcia L. Hortega, Lonna Hortega and Josiah Hortega." On June 24, 1986, the decree was modified to state that "the respondent is granted permission to take his ex-wife's name off the *** Northern Illinois Gas Company's insurance policy provided to respondent through work and membership, so long as Josiah Hortega and Lonna Hortega's names are left on the polic[y] as the primary beneficiaries until they attain the age of 21 years."

At the hearing on the plaintiffs' action, Ron Hepner testified that he was a personnel director for the Northern Illinois Gas Company. When the decedent transferred into his department in the late summer or early fall of 1985, Hepner spoke with him about the company's benefits. He told the decedent that as a benefit of employment the company provided him with a term life insurance policy administered by Aetna Life Insurance Company. Hepner also told him that the company provided an accidental death and dismemberment policy, but did not tell him the name of the company that administered it. Hepner noted at trial, however, that this was the Home insurance policy.

Hepner also stated that the benefits became effective on April 10, 1985, when the decedent's probationary period ended. On that date, the decedent signed a beneficiary card naming the guardian as his primary beneficiary and his daughter Lonna as his secondary beneficiary. The card applied to both the Aetna plan and the Home plan, and at their meeting Hepner informed the decedent of this fact.

Hepner testified that on November 22, 1985, the decedent filled out a new beneficiary card naming the widow as the primary beneficiary and his daughter Lonna as the secondary beneficiary. Hepner said that although the new beneficiary card mentioned only the Aetna policy, there was no separate beneficiary card for the Home policy.

Therefore, under company rules the card would apply to both plans. If the decedent wanted to name a different beneficiary for the Home policy, however, he could do so by submitting a request in writing.

Hepner stated that he gave the decedent a copy of the employee handbook. The handbook explained that the Home policy would pay benefits only in the event of accidental death, dismemberment, or total disability. It also stated that the Home policy beneficiary would be the same as the Aetna policy beneficiary, unless the employee indicated otherwise in writing.

John Brossard testified that he was an underwriting manager for the Home Insurance Company. Under his company's contract with Northern Illinois Gas Company, the beneficiary of the Home policy was the same as the beneficiary under the Aetna policy, unless the policyholder requested in writing that a different beneficiary be named. According to his records, at the time of the decedent's death the widow was the beneficiary of the Home policy.

In its order, the trial court noted that there was no dispute that the guardian should receive the Aetna policy proceeds. Consequently, he awarded her the $49,000 in benefits. With regard to the Home policy, the court found that the divorce decree and the modification referred only to the Aetna policy. Since the guardian therefore had no equitable right to the proceeds, he awarded the $57,000 in benefits to the widow.

The guardian argues that the trial court erred in awarding the Home policy proceeds to the widow. She contends that the Aetna and Home policies were part of an integrated life insurance plan. Consequently, since the divorce decree and modification required the decedent to retain his children as beneficiaries of his life insurance policy, the guardian argues that she was entitled to the Home policy proceeds. In support of her argument, she notes that the second beneficiary card referred only to the Aetna policy.

The widow responds that the Home policy was not a life insurance policy because it concerned only accidental death, dismemberment, or total disability. Consequently, she asserts that the trial court properly found that the divorce decree did not apply to it.

■■ ■ As a general rule, an insured may change the beneficiary of his life insurance policy if that right is reserved to him. (*Brunnenmeyer v. Massachusetts Mutual Life Insurance Co.* (1978), 66 Ill. App. 3d 315, 384 N.E.2d 446.) However, where a divorce decree requires an insured to maintain life insurance for the benefit of a particular beneficiary, that beneficiary has an enforceable equitable right to the proceeds of the insurance policy against any other named beneficiary

except one with a superior equitable right. (*In re Schwass* (1984), 126 Ill. App. 3d 512, 467 N.E.2d 957.) In interpreting the provisions of a divorce decree, the court must give effect to the intent of the court that entered the decree, as well as the intentions of the parties. (*In re Marriage of Arkin* (1982), 108 Ill. App. 3d 103, 438 N.E.2d 957.) The best indication of the parties' intentions is the plain language of the instrument. See *Arkin*, 108 Ill. App. 3d at 108, 438 N.E.2d at 961-62.

■ The divorce decree referred only to the decedent's life insurance policy with his employer. Since the Home policy paid benefits only in the event of accidental death, dismemberment, or total disability, we agree with the trial court's conclusion that it was not covered by the divorce decree. Moreover, although the second beneficiary card referred only to the Aetna plan, the decedent had been informed that the beneficiary card applied to both policies. The employee handbook also referred to that fact. Accordingly, we find that the trial court properly awarded the proceeds of the Home policy to the widow.

The judgment of the circuit court of La Salle County is affirmed.

Affirmed.

STOUDER and WOMBACHER, JJ., concur.