2022 IL App (1st) 210729-U

FOURTH DIVISION
March 24, 2022

No. 1-21-0729

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF MARLA J. MILUS, deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (ESTATE OF MARLA J. MILUS, DECEASED, | ) | Cook County |
| BY ITS INDEPENDENT REPRESENTATIVE | ) | |
| WILLIAM MILUS, JR. | ) | |
| | ) | No. 19 P 880, |
| Plaintiff-Appellee, | ) | cons. with 04 D 1114 |
| | ) | |
| v. | ) | |
| | ) | Honorable |
| WILLIAM MILUS, | ) | Terrence J. McGuire, |
| | ) | Judge Presiding. |
| Defendant-Appellant.) | | |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming the grant of partial summary judgment in favor of a decedent's estate where the decedent equitably owned her former spouse's insurance policy and their marital settlement agreement provided for rights of successorship.

¶ 2    At the time of her passing in 2018, Marla Milus (Marla) was involved in post-decree litigation in the circuit court of Cook County with her former spouse, William Milus (William). Marla had alleged that William failed to comply with the provisions of the parties' 2006 marital settlement agreement regarding life insurance.  Specifically, Marla had asserted that William

dropped her as a beneficiary from his life insurance policy, despite her having made payments toward the insurance premiums. Marla died intestate, and her sole heir at law – her son William Milus, Jr. (William Jr.) – was appointed as the independent administrator of her estate. After the domestic relations case was consolidated into the probate proceedings, William Jr., as administrator, filed a complaint against his father, William. On the parties' cross-motions for partial summary judgment, the circuit court found that Marla's rights as the equitable owner of the life insurance policy transferred to her estate and that the estate (*i.e.*, William Jr.) was entitled to $400,000 of life insurance coverage from the policy. Pursuant to Illinois Supreme Court Rule 304(b)(1),[1] William appeals from the denial of his motion for partial summary judgment and the grant of partial summary judgment in favor of Marla's estate. As discussed below, we affirm the judgment of the circuit court.

¶ 3                                     BACKGROUND

¶ 4                              *The 2006 Judgment*

¶ 5      After approximately 25 years of marriage, William filed a petition for dissolution of marriage in the circuit court of Cook County. On November 30, 2006, the circuit court entered a judgment for dissolution of marriage, which incorporated the parties' marital settlement agreement (the judgment). William and Marla's only child, William Jr., was 16 years old at the time of the judgment.

¶ 6      Section 4.2 of the marital settlement agreement addressed the issue of life insurance.[2]

_____

[1] Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016) addresses appeals from final judgments that do not dispose of an entire proceeding. Under section 304(b)(1), a judgment or order entered in the administration of an estate which finally determines a right or status of a party is appealable without any special finding. *Id.*

[2] Section 4.2 provides, in its entirety, as follows:
"**LIFE INSURANCE**: Each party shall keep and maintain any and all life insurance on his or her life. William shall maintain such insurance with a minimum death benefit of $400,000.00 for the benefit of the minor child, educational expenses for the minor child, and for the benefit of Marla until such

Among other items, the section set forth the parties' respective obligations with respect to an insurance policy on William's life. Section 4.2 provided, in part, that William was required to maintain and pay for a $400,000 life insurance policy with William Jr. as the beneficiary for the first 5.5 years after the 2006 judgment, at which point the beneficiary reverted to Marla. For the next 4.5 years – commencing in 2012 – William was required to maintain a minimum $200,000 life insurance policy, with the premium to be split between the parties; if Marla requested a policy in excess of $200,000, she was responsible for the premium. Marla requested $400,000 in coverage, and she paid the premium attributable to that amount. At the expiration of the 4.5-year period – or a total of 10 years from the entry of the judgment – William's obligation to obtain such life insurance policy ceased. Section 4.2 provided that "[a]t such time, if Marla requests that William maintain any life insurance policy, Marla shall be responsible for any and all premiums and related expenses, if it is possible for William to maintain such policy or Marla shall otherwise obtain her own policy on William's life." William was required to cooperate if Marla chose to have him "maintain this insurance policy."

———————————————

time as the minor child is emancipated and no longer eligible to receive child support or college payments under this Agreement. Marla shall maintain such insurance with a minimum death benefit of $100,000.00 for the benefit of the child until such time as the child is emancipated and no longer eligible to receive child support or college payments under this Agreement. Each party shall name the other party as trustee for the exclusive use and benefit of the child as the beneficiary of any such insurance policy for the first five and one half (5.5) years, thereafter the beneficiary shall revert to Marla. Neither party may borrow against or encumber any such policy unless the death benefits in total remain at least $400,000.00 and $100,000.00 respectively. Each party may provide at his or her own option, additional insurance in excess of the amount required in this paragraph.

For the first five and one half (5.5) years, William shall be responsible for the payment in full of the premium on his $400,000 policy. Upon the expiration of five and one half (5.5) years from Judgment entry and lasting for a subsequent four and one half (4.5) years, William shall maintain a minimum of $200,000 life insurance policy, with the premium to be split equally by the parties. If Marla requests that William maintain a policy in excess of $200,000, Marla shall pay such premium. Upon the expiration of four and one half (4.5) years, or a total of ten (10) years from date of Judgment entry, William's obligation to obtain such life insurance policy ceases. At such time, if Marla requests that William maintain any life insurance policy, Marla shall be responsible for any and all premiums and related expenses, if it is possible for William to maintain such policy or Marla shall otherwise obtain her own policy on William's life. William shall cooperate if Marla chooses to have William maintain this insurance policy."

¶ 7    Although not expressly contemplated by the judgment, William added his then-girlfriend and current wife, Christine Milus (Christine), as another primary beneficiary on the policy. William designated Christine as the beneficiary as to any death benefit in excess of $400,000. The available death benefit appears to have increased over time, eventually reaching $600,000. William charged Marla a pro-rated share of the premium, *i.e.*, 66.6% (based on $400,000 in death benefits for Marla and $200,000 for Christine). Marla made the biannual premium payments from 2012 through the second payment due for 2016. On her final check to William in August 2016, Marla wrote "9-1-16 – 3-1-17," *i.e.*, the coverage period attributable to her premium payment. Marla paid approximately $5500 in total premium payments.

¶ 8    Section 11.6 of the judgment, entitled "Successors," provides that the parties' agreement is binding on and inures to the benefit of their heirs, executors, administrators, guardians, trustees, assigns, and other successors.

¶ 9                              *Post-Decree Litigation*

¶ 10    In late November 2016, Marla filed a petition to extend and modify William's maintenance obligation under the judgment.[3] Marla represented that she had serious health issues and had not been employed since her retirement in 2013. According to Marla, William was employed and had a successful career. Marla requested that the court continue William's maintenance payments in the minimum monthly amount of $2000 until an increased award could be set based on Marla's physical and financial circumstances. She also asserted that William had disposed of his interest in a technology business without providing her 50% of any net proceeds of its sale, liquidation, or transfer, as required by the judgment.

_____

[3] Pursuant to section 2.2 of the marital settlement agreement, William had agreed to pay $2000 per month to Marla as unallocated family support for a 3-year period and then as maintenance for an additional 7 years. The maintenance was reviewable if Marla filed a petition prior to November 30, 2016.

¶ 11     William responded that he was unemployed due to health issues and was unable to pay additional maintenance.  In a subsequent motion to dismiss Marla's petition pursuant to section 2-615(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(a) (West 2016)), William represented that the technology business had become insolvent and was forced to close.  In an affidavit appended to the dismissal motion, William averred that his medical diagnoses included renal cancer, permanent ocular diplopia strabismus, rheumatoid arthritis, and an aneurysm of the aorta root.  William asserted that he and Marla lacked the funds to engage in protracted litigation, and he urged the court to dismiss her petition in the interest of judicial economy.

¶ 12     While Marla's petition and William's dismissal motion were pending, Marla filed a petition for rule to show cause *instanter* for indirect civil contempt and an emergency petition for injunctive relief.  Marla alleged that William willfully and intentionally violated the judgment by failing to pay $8000 in maintenance for the period from July to November 2016 and failing to cooperate with her with respect to the life insurance policy.  Specifically, Marla alleged that William ignored her repeated attempts to obtain payment information regarding the first insurance premium payment for 2017.  In light of William's alleged declining health and financial difficulties, Marla sought an injunction requiring him to, among other things: (a) immediately provide Marla with the requested premium information; (b) add her name as the sole beneficiary on the life insurance policy if William had removed her name as a beneficiary; (c) reinstate the policy if he had terminated it or allowed it to lapse; and (d) award her attorney fees and costs incurred in pursuing the petition.  In a subsequent filing, Marla asserted that William had wrongfully removed her as a beneficiary on his life insurance policy.  The record indicates William had removed Marla as a beneficiary and had designated Christine as the sole primary beneficiary on the $600,000 policy as of early December 2016.

¶ 13 In his response to Marla's petition for rule to show cause, William argued that his obligation to maintain a life insurance policy ceased after 10 years from the date of the judgment, or November 30, 2016. William asserted that he received no notice from Marla that she wished to continue to maintain the life insurance policy until several months after the 10-year deadline had passed.

¶ 14 The circuit court entered an order on November 3, 2017, directing the parties to cooperate to "put Marla Milus back on to the life insurance policy on the same terms as set forth" in the judgment. A subsequent order entered on January 12, 2018, provided that the policy was not to be amended or modified in any way other than increasing the payout amount, if possible; the order further provided that the "$600,000.00 coverage with Christine Milus as beneficiary is not to be changed or amended in any way." Marla filed a motion to strike and/or vacate a portion of the latter order, arguing that the circuit court had prematurely made a critical substantive ruling during the pretrial conference on that date without affording Marla the opportunity to develop her case, present witnesses, and proceed to trial.

¶ 15 In June 2018, Marla filed a motion to enforce judgment and to compel her reinstatement as a beneficiary on the policy. She sought an order compelling William to reinstate her to "full $400,000 beneficiary status which she held as of December 1, 2016" and to award her attorney fees pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(b) (West 2018)). On August 8, 2018, the circuit court entered an agreed order which provided, in part, that subject to Marla's right to a full hearing, and in view of William's agreement to reinstate Marla as a 50% beneficiary on the existing policy or any successor policy which had a $600,000 death benefit, "William shall take no action to reduce or otherwise encumber the Policy until further order of court."

¶ 16                                              *Probate Litigation*

¶ 17    Prior to resolution of the foregoing matters – or the modification of the beneficiary designation to add Marla back on to the policy – Marla died intestate on December 17, 2018. Her sole heir at law, William Jr., was appointed as the independent administrator of her estate. While the proceedings in the probate division (case number 19 P 880) were pending, William filed a motion in the domestic relations division (case number 04 D 1114) to dismiss Marla's petition for rule to show cause and any other pending pleadings under section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)), based on her death. Her estate opposed the dismissal motion, arguing that based on the August 8, 2018 order, the estate was entitled to maintain her interest in the death benefits of William's life insurance policy. An order was subsequently entered which transferred the domestic relations case for consolidation with the probate case.

¶ 18    The estate ultimately filed a third amended complaint containing four counts against William. In count I, the estate sought a declaratory judgment wherein William is required to change the beneficiary designation on the life insurance policy to either the estate or William Jr. In count II – breach of contract – the estate alleged that William breached the judgment (which incorporated the parties' marital settlement agreement) by failing to maintain the insurance policy as required. In count III, the estate asserted a claim to extend and modify maintenance under the judgment, *i.e.*, awarding the estate extended maintenance sums owed to Marla through the date of her death in 2018. In count IV, the estate sought attorney fees pursuant to section 508(b) of the Act based on William's alleged repeated and intentional failure to comply with the marital settlement agreement and the circuit court's orders.

¶ 19    Pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2020)), William sought partial summary judgment as to count I of the third amended complaint – the declaratory

judgment count – arguing that Marla was never the "equitable owner" of the policy itself but was only entitled to that which was provided in the judgment: the right to be designated as the beneficiary of a specified death benefit for a particular period of time. William posited that there would be no distinction between the owner and the beneficiary of a life insurance policy if merely being designated as the beneficiary were sufficient to make the beneficiary the equitable owner of the policy.

¶ 20    In its motion for partial summary judgment, the estate argued that the policy was an asset allocated to Marla – not William – under the terms of the judgment, and that William failed to cooperate with her in connection with the continuation of "her" policy. The estate further asserted that section 11.6 of the parties' marital settlement agreement, as incorporated into the judgment, expressly contemplated successor rights.

¶ 21    Each party also moved to strike the affidavits of the other. William asserted, in part, that his son's affidavit was not based on his personal knowledge. William Jr. claimed, in part, that his father's affidavit failed to set forth a proper foundation for the records relied upon therein.

¶ 22    The circuit court entered an order on June 1, 2021, granting the estate's motion for partial summary judgment and denying William's motion for partial summary judgment as to Count I (declaratory judgment). After denying the parties' respective motions to strike the other's affidavits, the court found that Marla's interest transferred from an equitable interest in the proceeds to equitable ownership of the policy after the 10-year period had lapsed. The circuit court rejected William's argument that the parties did not contemplate William Jr. being the beneficiary of William's policy once he reached the age of majority and graduated from college. In addition, the circuit court found that the "successor" provision of the marital settlement agreement (section 11.6) was enforceable. The court concluded that "[d]ue to the language in

the provisions and the intent of the parties to benefit [William Jr.], it is not against public policy or morals to enforce the Judgment, specifically the successor provision." The court held that the rights Marla possessed as an equitable owner transferred to her estate such that the estate can demand that the estate, or William Jr. individually, be named as beneficiary of the policy.

¶ 23 The circuit court subsequently amended the June 1, 2021 order *nunc pro tunc* to reflect that the estate, or William Jr. as Marla's sole heir, is entitled to $400,000 of life insurance coverage from the policy. William was ordered to change the beneficiary, and the estate was ordered to reimburse William for all premium payments attributable to the $400,000 death benefit since Marla's last payment in August 2016. William timely filed the instant appeal.

¶ 24                                    ANALYSIS

¶ 25 William contends on appeal that the circuit court erred in granting the estate's motion for partial summary judgment and in denying William's motion for partial summary judgment. A party is entitled to summary judgment where the pleadings, depositions, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). "The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 14. In determining whether a genuine issue of material fact exists, the court must construe the evidence in the record strictly against the movant and liberally in favor of the opponent. *Id.* ¶ 15. See also *Andrews v. Metropolitan Water Reclamation District of Greater Chicago*, 2019 IL 124283, ¶ 20.

¶ 26 The parties in the instant case filed cross-motions for partial summary judgment. "When parties file cross-motions for summary judgment, they agree that only a question of law is

involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The mere filing of such cross-motions, however, does not establish that there is no genuine issue of material fact, nor does it obligate a court to render summary judgment. *Id.*

¶ 27    In appeals from summary judgment rulings, the standard of review is *de novo*. *Lewis*, 2020 IL 124107, ¶ 15. See also *Universal Underwriters Insurance Co. v. LKQ Smart Parts, Inc.*, 2011 IL App (1st) 101723, ¶ 11 (noting that while the denial of a motion for summary judgment is ordinarily not a final order and not appealable standing alone, the court may properly review such denial if the appeal is brought in conjunction with the appeal from an order granting a cross-motion for summary judgment). The interpretation of a marital settlement agreement is also reviewed *de novo* as a question of law. *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009).

¶ 28                                    *Policy Ownership*

¶ 29    The initial issue is whether Marla was the equitable owner of the policy. This court has recognized that the holder of a beneficial interest can be the "effective owner" of property "even though it does not possess legal title." *City of Chicago v. Elm State Property LLC*, 2016 IL App (1st) 152552, ¶ 20. In the instant case, William Jr. contends that his parents' marital settlement agreement provided for Marla's equitable ownership of the policy (as to $400,000 in death benefits). William argues that Marla's rights were solely those of a policy beneficiary, not a policy owner.

¶ 30    Although an insured on a life insurance policy generally may change the beneficiary, a marital settlement agreement – or the judgment of dissolution into which the agreement is incorporated – may require an insured to maintain life insurance for the benefit of a particular beneficiary. See, *e.g.*, *Home Insurance Co. v. Hortega*, 193 Ill. App. 3d 941, 943 (1990). In such instance, "that beneficiary has an enforceable equitable right to the proceeds of the

insurance policy against any other named beneficiary, except one with a superior equitable right." *Id.* at 943-44. Accord *Schwass By and Through Postillion v. Schwass*, 126 Ill. App. 3d 512, 514 (1984). See also *In re Estate of Beckhart*, 371 Ill. App. 3d 1165, 1169 (2007) (providing that "[a] settlement agreement that requires an insured to name his child as the beneficiary of a life insurance policy vests the child with an equitable right that can be enforced"). When a former spouse has failed to comply with the terms of a marital settlement agreement regarding the treatment of a life insurance policy, courts have imposed equitable remedies to effectuate the terms of the agreement. See, *e.g.*, *Perkins v. Stuemke*, 223 Ill. App. 3d 839, 842 (1992) (noting that "courts have imposed constructive trusts on the proceeds of the deceased's life insurance because the marital settlement agreement gives the former spouse or children named as beneficiaries in the binding agreement a superior equitable interest in the life insurance proceeds over later named beneficiaries").

¶ 31     In the instant case, the parties disagree regarding the meaning and effect of the life insurance provision in the marital settlement agreement. Our main objective when interpreting a marital settlement agreement is to give effect to the purpose and intent of the parties at the time they entered into the agreement. *In re Marriage of Kehoe and Farkas*, 2012 IL App (1st) 110644, ¶ 18. See also *Salce v. Saracco*, 409 Ill. App. 3d 977, 981 (2011) (providing that the primary goal of contract interpretation is to give effect to the parties' intent). Section 4.2 of the agreement herein provides, in part, that at a time 10 years from the date of the judgment of dissolution (*i.e.*, November 30, 2016), "if Marla requests that William maintain any life insurance policy, Marla shall be responsible for any and all premiums and related expenses, if it is possible for William to maintain such policy or Marla shall otherwise obtain her own policy on William's life." The section further provides: "William shall cooperate if Marla chooses to have

William maintain this insurance policy."

¶ 32    As a threshold matter, William suggests that Marla did not properly "request" the continuation of the policy.  Simply put, we reject this suggestion.  The record on appeal includes Marla's check sent to William in August 2016, on which she wrote "9-1-16 – 3-1-17" – the next 6-month coverage period.  Based on such writing, Marla plainly intended to continue the policy beyond the 10-year mark referenced in section 4.2, *i.e.*, November 30, 2016.  When William dropped her from the policy in December 2016,[4] he apparently failed to inform Marla or to refund a pro-rated portion of her final premium payment.  The record further suggests that Marla's efforts to obtain information from William regarding the status of the policy in and after March 2017 were met with resistance or silence.

¶ 33    William also contends that Marla's status as to the policy was solely that of a beneficiary.  However, Marla's conduct and the plain language of the marital settlement agreement would indicate otherwise.  Section 4.2 of the agreement provided that if Marla wanted continued coverage after the initial 10-year period, she had two options: she either could have William keep his policy, or she could obtain a new policy on his life.  If Marla had purchased a new policy, there would be no question that she would be the policy owner and would possess the rights incidental to such ownership.  To interpret the contract in the manner suggested by William would result in two dramatically different sets of rights for Marla depending on which option she selected under section 4.2.  We reject such an interpretation.  See *In re Marriage of Sweders*, 296 Ill. App. 3d 919, 922-23 (1998) (noting that "to the extent that a contract is susceptible of two interpretations, one of which makes it fair, customary, and such as prudent persons would naturally execute, while the other makes it inequitable, unusual, or such as reasonable persons

_____

[4] We observe that William attempted to drop Marla from the policy prior to November 30, 2016, but his paperwork was rejected by the insurance company based on a technical issue.

would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred" (internal quotation marks omitted)). Although we recognize that the language of section 4.2 would ideally be explicit regarding Marla's status thereunder, "written marital settlement agreements are often the product of intense negotiations that seldom offer the luxury of refined drafting." *Blum*, 225 Ill. 2d at 35 n.1.

¶ 34    We further observe that Marla's conduct was consistent with her status as an equitable owner of the policy. When presented with the option of a $200,000 policy or a $400,000 policy in 2012, Marla chose to maintain a $400,000 policy and was thus responsible for the entire premium as to that amount under the terms of section 4.2 of the marital settlement agreement. She paid an aggregate of approximately $5500 in premium payments. When William was not forthcoming with information regarding the policy in 2017, she was concerned about the prospect of the policy lapsing or William otherwise negatively affecting her rights to the policy. Despite her significant health issues and modest financial circumstances, the record indicates that Marla prioritized the continuation of the policy on William's life at the maximum amount.

¶ 35    In sum, Marla paid for – and equitably owned – the insurance policy on William's life at the time of her death to the extent of $400,000 in benefits. *E.g.*, *In re Estate of Maslowski*, 204 Ill. App. 3d 379, 383 (1990) (affirming the trial court's holding that "the equitable ownership of the life insurance policy and the right to the proceeds therefrom was transferred to the decedent's estate by the delivery of the policy and premium notice to the attorney for the estate on the condition that the premium would be paid"). We thus turn to the next issue: whether Marla's estate (or William Jr. individually) should be named as a beneficiary.

¶ 36                                  *Rights of Successorship*

¶ 37    William contends that his son, William Jr., has no right to make the premium payments

and continue the policy for his own benefit. There is no indication in the record, however, that either William or Marla had intended for their rights and obligations under their marital settlement agreement to be terminated by his or her death. A contract generally survives the death of a party thereto except where the contract requires the continued existence of a particular person or thing for its performance. *In re Estate of Braun*, 222 Ill. App. 3d 178, 187 (1991). See also *Estate of Dompke v. Dompke*, 186 Ill. App. 3d 930, 935 (1989) (noting that the former husband's death did not defeat the "enforceable intention of the parties manifested" in the dissolution judgment which incorporated the parties' marital settlement agreement). In the instant case, the parties expressly agreed in section 11.6 of the marital settlement agreement that their agreement was binding on and inured to the benefit of their heirs, executors, administrators, guardians, trustees, assigns, and other successors.

¶ 38 William's reliance on *Vogel v. Melish*, 31 Ill. 2d 620 (1964), is misplaced. The Illinois Supreme Court in *Vogel* held that a stockholder's agreement for a closely held company terminated upon the death of one of the two owners, despite a provision in the agreement that it "shall be binding upon and inuring to the benefit of the parties hereto and their respective administrators, executors, heirs and personal representatives." *Id.* at 622. Our supreme court agreed with the conclusion of the appellate court that the stockholder's agreement was personal to the parties and that neither party was required to accept performance by "strangers" to the agreement. *Id.* at 624. Unlike in *Vogel*, the provisions of the parties' marital settlement agreement addressing the life insurance policy were not of a "personal character" (*id.* at 626) such that Marla's death would terminate William's obligations thereunder.

¶ 39 In conclusion, the marital settlement agreement negotiated and executed by William and Marla expressly provided for rights of successorship. See *Blum*, 235 Ill. 2d at 33 (noting that

"[a] marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement"). Under the circumstances herein, we affirm the grant of summary judgment in favor of William Jr., as Marla's sole heir, as to $400,000 in insurance coverage on his father's life under the policy.

¶ 40                                 *Additional Issues*

¶ 41     Based on the foregoing analysis, we need not consider the parties' respective arguments regarding the purported deficiencies of the affidavits. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10 (noting that reviewing courts generally do not render advisory opinions or consider issues where the result will not be affected regardless of how the issues are decided). To the extent that any affidavit includes unsupported or conclusory statements, such statements have been disregarded. *E.g.*, *Cincinnati Companies v. West American Insurance Co.*, 287 Ill. App. 3d 505, 514 (1997) (noting that there was no need for the trial court to strike an affidavit where it did not consider the portions of the affidavit that were improper under Illinois Supreme Court Rule 191).

¶ 42     We further observe that certain counts of the third amended complaint were not resolved by the circuit court's June 2021 orders at issue herein. As to count III (regarding maintenance), William filed a motion for judgment on the pleadings; he also moved to strike count IV (regarding attorney fees). Nothing in this decision should be construed to affect the validity or resolution of such claims.

¶ 43                                 CONCLUSION

¶ 44     The judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 45     Affirmed.